**In re Michael Kent JAMES, Suzanne Vaughn James, Debtors.**

No. 99–02275–5–ATS.

United States Bankruptcy Court,
E.D. North Carolina,
Raleigh Division.

March 23, 2001.

Michael Ryan Dyson, Dyson Hopper Brennan & Bradford, PLLC, Raleigh, NC, for debtors.

John F. Logan, Raleigh, NC, Chapter 13 Trustee.

## ORDER DENYING CONFIRMATION OF PLAN

A. THOMAS SMALL, Bankruptcy Judge.

This matter comes before the court on the Trustee's Objection to Confirmation of the Debtors' Chapter 13 Plan of Reorganization and Motion to Dismiss and Debtors' Request for Confirmation. A hearing took place in Raleigh, North Carolina on March 6, 2001.

## FACTS

The debtors, Michael Kent James and Suzanne Vaughn James, filed their chapter 13 petition on November 3, 1999. The first meeting of creditors took place on December 9, 1999. Though the debtors submitted a proposed plan of reorganization with their petition in November 1999, as well as a modified plan on June 13, 2000, no plan has been confirmed. At issue is a claimed exemption in the debtors' schedules for stock in Inspire Pharmaceuticals in the amount of $3,500.

Mr. James, a Ph.D. pharmacist, worked as the Director of Biology for Inspire Pharmaceuticals in 1995. As a benefit to his employment, he received options to purchase 100,000 shares of Inspire, vesting over four years. After less than three years at Inspire, Mr. James was terminated. He was required to exercise his vested options within 90 days of termination, which he did. At the hearing on March 6, 2001, Mr. James testified that he paid approximately $5,100 for 73,000 shares of Inspire stock.

When asked about the valuation of the stock for purposes of his claimed exemption, Mr. James testified that Inspire, a start-up company at the time of Mr. James' employment, had taken on additional venture capital between the time of Mr. James' stock purchase and the filing of his petition. As a result, the value of the existing stock was diluted, and the debtors believed $3,500 was a reasonable estimate of the value of the now-diluted stock in a private corporation. Mrs. James noted at the § 341 meeting that if Inspire went public, the stock might then be worth something, but that the value of the stock had instead been diluted since Mr. James left the company.

On April 25, 2000, in response to an inquiry from the trustee, the debtors wrote a letter explaining that they held

73,320 shares of Inspire stock, for which they paid $5,132. The letter further explained that the additional venture capital investments in Inspire diluted the value of the stock, estimated to be $3,500 as listed on the debtors' schedules.

On July 31, 2000, Inspire Pharmaceuticals made an initial public offering (IPO) of its stock, and its stock was trading at $29/share shortly thereafter. The common stock underwent a reverse-split, resulting in the debtors' owning 41,000 shares. At some time after the IPO, the debtors sold their stock for approximately $700,000. The debtors did not seek or obtain court permission for the sale of the stock. The proceeds from the stock sale are being held in a money market account and are earning 5% interest, and the tax liability from the sale of stock has not yet been calculated or paid.

The trustee has objected to confirmation of the debtors' chapter 13 plan of reorganization, contending that the claimed stock exemption should be disallowed, that the debtors have failed to submit their plan in good faith, and that the plan fails to meet the "best interests of creditors" test because the stock proceeds could pay all creditors in full. The debtors contend that the exemption should be allowed because the Trustee failed to object in a timely manner, and that the appreciation in value of the stock should inure to the benefit of the debtors.

## DISCUSSION

### The § 341 Meeting of Creditors

At the hearing on this matter, the trustee contended that the debtors failed to provide adequate information about the Inspire stock at the § 341 meeting, and that

the debtors likely knew about the pending Inspire IPO. Also at the hearing, some doubt was expressed as to whether the § 341 meeting had concluded on December 9, 1999. As a result, the court and counsel reviewed the tape of the § 341 meeting after the March 6 hearing.

The court finds that the debtors were forthcoming in their answers to questions about the Inspire stock posed at the § 341 meeting. They disclosed the purchase price as "around $5000" and explained that the $3,500 valuation was based on dilution created by the additional venture capital investment in Inspire. The debtors also provided the Trustee with the name and address of the President and CEO of Inspire.[1] While Mr. James' testimony at the March 6 hearing was more detailed, it was entirely consistent with the testimony at the § 341 meeting.

Of more significance is the fact that the Trustee chose not to conclude the § 341 meeting on December 9, 1999. Instead, he announced that the meeting would be continued and that the parties would try to reach a convenient date for all to re-convene. He confirmed that he would send out a notice of the continued § 341 meeting "if we have one," and then promised to continue the meeting at the request of one of the attending creditors. It appears to the court that the § 341 meeting was never re-convened.

Under Rule 4003(b) of the Federal Rules of Bankruptcy Procedure, the trustee and creditors have 30 days from the conclusion of the § 341 meeting to object to a debtor's claimed exemptions. The debtors contend that the deadline began to run from December 9, 1999, and that the trustee is now barred from objecting to the

---

1. The Trustee noted at the March 6 hearing that the debtors failed to disclose the number of shares of Inspire stock they owned at the

meeting of creditors; however, the court notes that the Trustee did not pose this question to the debtors at the meeting.

debtors' claimed exemption. The debtors rely upon 2 K. Lundin, *Chapter 13 Bankruptcy* § 161.1–2 (3d ed.2000), *hereinafter* "Lundin," which provides that "[i]f the debtor claims exemptions and no one objects within the 30 days described in Bankruptcy Rule 4003(b), the exemptions are allowed and cannot be collaterally attacked, for example, through an objection to confirmation on best-interests-of-creditors test grounds under § 1325(a)(4)." The debtors therefore contend that they are entitled to keep the proceeds of the stock sale and are not required to make those funds available for payments to creditors.

■■■ The initial question is whether the § 341 meeting has concluded as contemplated in Rule 4003(b). A number of courts have looked into what action is necessary to conclude a meeting of creditors that has been adjourned, and three different approaches have been taken. *See In re Brown*, 221 B.R. 902, 904–906 (Bankr. M.D.Fla.1998). The first approach is a "Bright Line Rule," created from an analysis of the interplay between Rule 4003(b) and Rule 2003(e). *Id.* at 905 (citing *In re Levitt*, 137 B.R. 881 (Bankr.D.Mass.1992)). The *Levitt* court held "that where the trustee fails to announce an adjourned date and time within thirty days of the date on which the meeting of creditors was last held, the meeting will be deemed to have concluded on the last meeting date." *Id.*

The Ninth Circuit Court of Appeals recently adopted the Bright Line Rule in *Smith v. Kennedy (In re Smith)*, 235 F.3d 472 (9th Cir.2000), noting that

> To authorize trustees to adjourn meetings indefinitely, even when it is unlikely that any subsequent meeting will in fact be called, would nullify the thirty-day requirement of Rule 4003(b), rendering the holding in *Taylor [v. Freeland &*

*Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992)] hollow, and undermining the concerns expressed by the Supreme Court about promptness and finality.

*Smith* at 476. The Ninth Circuit appears to be the only circuit court to have addressed this issue.

The second approach is the "Case by Case Analysis." *Brown* at 905. Courts adopting this view have held that a determination of the timeliness of an objection to exemptions "should be based upon the facts and circumstances of a particular case and whether the filing of an objection to the debtor's claim of exemptions was reasonable under the circumstances presented." *Id.* (citing *Petit v. Fessenden*, 182 B.R. 59 (D.Me.1995), *aff'd on other grounds*, 80 F.3d 29 (1st Cir.1996)). The *Brown* court ultimately adopted the case by case analysis, reasoning that trustees "should have the discretion to perform their duties," but that "some limitation based on reasonableness should apply." *Brown* at 906.

The final approach places the burden on the debtor to move for the conclusion of the meeting of creditors. *Id.* (citing *In re DiGregorio*, 187 B.R. 273 (Bankr.N.D.Ill. 1995)). "Under this approach, the meeting of creditors is concluded either when the trustee declares a formal conclusion of the meeting or when the debtor objects to the continuance of the meeting of creditors and the adjournment is found to be 'arbitrary, capricious, or an abuse of discretion.'" *Id.*

The court is persuaded that the Bright Line Rule is the better approach. The Bright Line Rule requires a trustee to arrive at a date and time for the continued § 341 meeting within 30 days of adjournment. This is a reasonable requirement and imposes no great burden on a trustee.

The Trustee failed to set a date certain for the continued § 341 meeting; the meeting would thus be deemed to have concluded on December 9, 1999. As a result, under the Bright Line Rule, the Trustee failed to timely object to the debtors' exemptions.

Because the Bright Line Rule has never been announced in this district, however, this court adopts the case by case approach.[2] Here, the case by case analysis yields the same result as the Bright Line Rule. As noted above, the debtors were forthcoming with their responses to the questions posed to them in their § 341 meeting. They continued to provide information as requested by the Trustee throughout the course of their chapter 13 proceeding, and it appears to the court that the debtors have been cooperative and truthful. While the Trustee may have legitimately believed at the time that he would conduct a further investigation that required continuing the § 341 meeting, he failed to schedule a continuation of the meeting or to take any further action (other than make informal requests for information, which were answered) until he filed the instant motion on October 31, 2000. The eleven months that passed between the initial meeting of creditors and the objections filed are not reasonable, and the Trustee is deemed to have waived his objections to the debtors' claimed exemptions through his failure to file a timely objection.

■ The Trustee has argued that he is not required to object to the debtors' exemptions in a chapter 13 case, as the exemptions are listed for purely informational purposes used in conducting the best interests of creditors test. The Trustee cites to *In re Walker,* 153 B.R. 565 (Bankr. D.Or.1993), for this proposition. The *Walker* court found the Bankruptcy Code

and Rule 4003 to be inconsistent, and held that Rule 4003 does not apply to cases filed under Chapter 13. The Bankruptcy Code nowhere excepts Rule 4003 from cases filed under chapter 13, and the majority of courts since 1993 have overwhelmingly found that trustees must object to claimed exemptions in chapter 13 cases within 30 days of the conclusion of the meeting of creditors. Judge Lundin specifically notes that Rule 4003(b) applies with equal force in a chapter 13 case, *see* Lundin at § 161.1, and the Chapter 13 Notice of Meeting of Creditors clearly sets forth the deadline for objections to exemptions as 30 days following the conclusion of the § 341 meeting. The court is satisfied that Rule 4003 does apply, and that the Trustee failed to timely object to the debtors' claimed exemptions.

**The Extent of the Exemption**

■ Having determined that the Trustee failed to timely object to the stock exemption, the court next turns to the extent of the exemption. The debtors contend that they are entitled to the entire value of the property, including any post-petition appreciation. The Trustee, on the other hand, contends that the debtors are entitled to exempt only $3,500 worth of the stock.

It is in this analysis that the manner in which the Debtors listed their exemption becomes relevant. In their Schedule C, the Debtors identify the property as "Inspire Pharmaceuticals stock" to be exempted under North Carolina General Statute § 1C–1601(a)(2), the North Carolina wildcard exemption. The value of the claimed exemption is listed as "$3,500," and the current market value of the property is listed as "$3,500." Nowhere do the

---

**2.** The case by case approach shall be the prevailing methodology in this court until

such time as a local rule is enacted adopting a different approach.

debtors list the number of shares of Inspire Pharmaceuticals stock they seek to exempt.

In *Hyman v. Plotkin (In re Hyman)*, 967 F.2d 1316 (1992), the Ninth Circuit Court of Appeals considered whether chapter 7 debtors had exempted their entire home, as opposed to the $45,000 allowable homestead exemption, by listing "homestead" instead of "homestead exemption" on their schedules. The court held that the trustee's failure to object to the exemption did not result in an exemption for the entire property, and the debtors were not entitled to the postfiling appreciation. In that case, the debtors' schedule listed "homestead" as an exemption under the California statute, and valued the exemption at $45,000.

> Based on this information, the Hymans did not sufficiently notify others that they were claiming their entire homestead as exempt property; their schedule only gave notice that they claimed $45,000 as exempt, which is the proper amount of their homestead allowance . . . . Thus, the trustee had no basis for objecting, and could well have suffered the bankruptcy judge's ire had he objected to the $45,000 exemption to which the Hymans were clearly entitled.

*Id.* at 1319. The court also noted that "[b]ecause the time to object is relatively short . . . it is important that trustees and creditors be able to determine precisely whether a listed asset is validly exempt simply by reading a debtor's schedules. Given that the debtor controls the schedules, we construe any ambiguity therein against him." *Id.* at 1319, n. 6.

The same reasoning has been applied in the Fourth Circuit. *See Addison v. Reavis*, 158 B.R. 53 (E.D.Va.1993), *aff'd*, *In re Grablowsky*, 32 F.3d 562 (4th Cir.1994) (unpublished opinion). *Addison* involved consolidated appeals from two bankruptcy court decisions: in the first, the debtors sought to exempt the value of their interest in two partnerships with a listed exemption amount of $1.00; in the second, the debtors sought to exempt the value of a 35% partnership interest, with the exemption amount listed as $10.00. No objections were filed to either exemption. The district court held that in both cases, the debtors' "exemption for that interest is limited to the precise value the debtor listed as exempt, regardless of the trustee's failure to object to the exemption." *Id.* at 55. The court also construed any ambiguities against the debtors, and found that rather than claiming the entire amount of their interests in the property as exempt, the debtors "instead have claimed a precise value amount of their interests exempt." *Id.* at 60. Finally, rather than seeking to excuse the failure to object, the *Addison* trustees sought only to uphold the exemption amounts claimed by the debtors. *Id.*

Following the *Addison* and *Hyman* courts' reasoning, this court finds that the debtors' exemption in the Inspire stock is limited to the amount of $3,500 as listed in their schedules, and does not include all the stock owned by the debtors.

**Effect of Delay in Confirmation**

▇ The debtors contend that the result would be different had the Trustee confirmed the debtors' chapter 13 plan in a timely manner. The argument begins with the assumption that the chapter 13 plan would have been confirmed prior to Inspire's IPO, at which time the stock was probably worth only $3,500. The liquidation analysis would have shown the stock to be worthless in a chapter 7, and the plan would likely have been confirmed. Any postconfirmation appreciation, then, would arguably inure to the benefit of the debtors. This argument fails to recognize that the Trustee would have the right to

seek modification of the plan under § 1329(a).

■■■ Under § 1329(a),

At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

Courts have implemented a "substantial change in circumstances" threshold for modification, in which the court must find "a *substantial change* in the debtor's income or expenses that was *not anticipated* at the time of the confirmation hearing." [3] *In re Solis,* 172 B.R. 530, 532 (Bankr. S.D.N.Y.1994) (citing 5 L. King, *Collier on Bankruptcy,* ¶ 1329.01 at 1329-5 (15th ed.1994)); *see also In re Arnold,* 869 F.2d 240 (4th Cir.1989). "A substantial change in circumstances can be increased income . . . or receipt of a large sum of money." *Solis* at 532 (citations omitted); *see also Barbosa v. Soloman,* 235 F.3d 31 (1st Cir. 2000) (holding modification of chapter 13 plan to require 100% payout to unsecured creditors following sale of investment property not an abuse of discretion).

In *Solis,* the court found that the debtor's postpetition sale of his medical prac-

tice constituted a substantial change in circumstances warranting the modification of his plan. The initial plan provided for a 10% payout to the debtor's unsecured creditors. Rejecting the debtor's argument that the medical practice had vested in him pursuant to § 1327(b), the court found that to allow the debtor to receive a $40,000 windfall "would be a perversion of the Code's good faith provision (section 1325(a)), and the ability to pay test (section 1325(b))." *Id.* at 533 (citations omitted).

While *Solis* addressed entirely nonexempt property, the United States District Court for the District of Oregon reached the same result in reviewing the sales proceeds of partially exempt property. *In re Suratt,* 1996 WL 914095 (D.Or.1996). In that case, the debtor's one-half interest in a residential property was valued at $100,000 on the date of confirmation. That plan provided for payment of approximately 5% to unsecured creditors, and did not provide for the sale of the residence. Twenty months after confirmation, the debtor and his wife sold the property for $265,000, prior to the completion of payments under the confirmed plan. The debtor's share of the proceeds was $44,693.24. The debtor had taken a homestead exemption of $15,000, which was allowed without objection. The remainder constituted the appreciated value of the property post-confirmation.

The debtor filed a motion asking the court to allow the debtor to keep all the nonexempt proceeds of the sale. The trustee filed a motion to modify the plan requiring the debtor to pay all the nonexempt proceeds into the plan, increasing the payout to unsecured creditors to 27%.

---

**3.** While some courts have expressed doubt as to the requirement that the change be unanticipated, *see, e.g., In re Witkowski,* 16 F.3d 739 (7th Cir.1994), the controlling case in the Fourth Circuit is *In re Arnold,* 869 F.2d 240 (4th Cir.1989), which does require both that the change be substantial and unanticipated. The result here would be the same under either analysis.

The court held that the purpose of § 1329(a) "is to protect creditors' rights to a debtor's increased income, including from proceeds from the sale of property that has appreciated in value, post-confirmation." *Id.* at *3. Relying on the substantial change in the debtor's ability to pay unsecured creditors, the court upheld the bankruptcy court's confirmation of the trustee's modified plan.

Based upon these authorities, the court finds that the sale of stock has significantly changed the debtors' ability to pay their unsecured creditors. And the debtors themselves contend that at the time of their petition, they could not have foreseen the IPO of Inspire Pharmaceuticals and the subsequent sale of the debtors' stock. Thus, had the debtors' plan been confirmed, the court would have found it appropriate at this time to modify the plan to allow for greater payments for the benefit of the unsecured creditors. It follows, therefore, that the debtors have not been penalized on this issue by the Trustee's failure to timely confirm their plan of reorganization.

**Confirmation**

■ With the foregoing as background, the court turns to the question of whether the debtors have proposed a confirmable plan. The unsecured claims against the debtors total $244,546.56. The nonexempt portion of the proceeds from the sale of Inspire stock is sufficient to pay the unsecured creditors in full. As a result, the liquidation test of § 1325(a)(4) is not met by the plan as proffered. Confirmation must, therefore, be denied.[4]

The court will, however, give the debtors an opportunity to modify their plan to comply with the provisions of § 1325(a) before dismissing their case.

## CONCLUSION

Based on the foregoing, the Trustee's Objection to Confirmation is ALLOWED. The Trustee's Motion to Dismiss is DENIED. The debtors' Motion to Confirm Plan is DENIED. The debtors' claimed exemption of Inspire Pharmaceuticals stock is ALLOWED in the amount of $3,500, and DENIED for its value over the exemption amount. The debtors have until April 2, 2001, to file a modified plan in accordance with this Order.

**SO ORDERED.**

---

4. In their brief, the debtors argue that the stock sale did not create disposable income under *In re Solomon,* 67 F.3d 1128 (4th Cir. 1995), and *In re Burgie,* 239 B.R. 406 (9th Cir. BAP 1999). Because the debtors' plan does not meet the requirements of § 1325(a)(4), the court is not required to reach the question of whether the stock proceeds constitute disposable income.