**In re Arthur Terry DALY, Debtor.**

**Robert N. Opel, Trustee, Movant,**

**v.**

**Arthur Terry Daly, Respondent.**

**New York Life Insurance Co., Movant,**

**v.**

**Arthur Terry Daly, Respondent.**

**No. 5:02–BK–00605.**

United States Bankruptcy Court, M.D. Pennsylvania.

Oct. 6, 2005.

Michael J. Burke, David J. Harris, Brad Kurlancheek, Esq., Brian E. Manning, Ernest A. Sposto, Jr., Philadelphia, PA, for Debtor.

Ernest A. Sposto, Jr., Scranton, PA, for Movant.

## *OPINION*

JOHN J. THOMAS, Bankruptcy Judge.

### STATEMENT OF FACTS & PROCEDURAL HISTORY

In 1989, Debtor purchased a disability insurance policy from New York Life Insurance Company (NYL). Debtor made a claim in July 1993 against the policy. NYL paid Debtor $400 a month for approximately four years before it terminated the policy.

On October 20, 1995, NYL filed a complaint in the Eastern District of Pennsylvania against the Debtor seeking the return of monies paid under the policy. Debtor responded, in part, by filing a counterclaim in an attempt to claim the policy's benefits.

Without the assistance of counsel, Debtor [1] filed a voluntary Chapter 13 petition on February 5, 2002. Of the documents filed in tandem with his petition, a handwritten notation was made on lined yellow paper that Debtor's Schedule B encompassed "$400 in Fleet Bank" and "$2,700 in HSBC Bank." The Court has not identified any other declaration of property ownership in the documents filed with Debtor's original Chapter 13 petition. Included with his petition was a handwritten document with a declaration under the heading of "Schedule C" that "All property listed I declare as exempt." *See* Doc. 1 at 2(3). Although Debtor did not disclose any additional assets in his "Schedule C", he did list on his Statement of Financial Affairs (Official Form 7) three causes of action to which he is or was a party to within one year immediately preceding the filing of his case. *See* Doc. 1. These actions were listed as "Daly vs Dr. Fried Phil CCP Dec 517,01", "Daly v. Dr Richmond N.Y. County", and "NY Life v. Daly USDC E District Pa." *See id.* Under the "NY Life v. Daly USDC E District Pa" heading, Debtor further additionally listed "1st 2–negligence cases" and "3rd Disability case". *See id.*

On July 29, 2002, Debtor filed a handwritten document entitled *Debtor's Supplement "ADD" to Schedules and "ADD" to the matrix of creditors.* *See* Doc. 52. In-

---

**1.** Prior to his bankruptcy filing, Debtor had been licensed by the Commonwealth of Pennsylvania to practice law. Although there is some disagreement as to why Debtor is no longer practicing law, it is undisputed that Debtor voluntarily surrendered his license in October 1993 and he has not sought to reactivate it.

cluded in this document is the following passage:

In the USDC for the E Dist of Pa,

NY Life Ins Company vs

ATerryDaly Civil XN# 95–6702

Contested debt of Debtor $167,000

Contested asset of Debtor $1,000,000

Based on a Private Disability

Insurance Policy

Lawyers

Debtor Rep.     N.Y. Life

Jeff Johnson, Esq     Jeff Dailey

*See id.* at 1.

On August 9, 2002, Debtor filed a handwritten document with a primary heading of *Amendment to Schedule A, Matrix of Creditors. See* Doc. 60. This document contains a handwritten passage identical to the one written in the July 29, 2002 amendment.

Debtor's Chapter 13 case was dismissed on September 3, 2002. The case was reinstated on October 10, 2002.

Debtor's Chapter 13 was converted to a Chapter 7 on March 3, 2003 and Robert Opel was appointed soon after as the Interim Trustee.

Through the aid of an attorney, Debtor filed an amended petition and amended schedules on July 11, 2003. *See* Doc. 139. These amendments included a declaration on Schedule B that a number of lawsuits [2] involving Debtor and various entities, had a "Current Market Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption" of "25,-000.00." On Schedule C, Debtor attributed "25,000.00" as the collective "Value of Claimed Exemption" of these causes of actions. He also listed "25,000.00" as their "Current Value of Property Without Deducting Exemption" based on "11 U.S.C. 522(d)(5) and 522(d)(11)(D) and (11)(E)."

Debtor filed an identical amended Schedule C on July 23, 2003.

Debtor's meeting of creditors was held on August 8, 2003 and "continued generally" by the Trustee. As of the date of this Court's hearing on the present matters, the meeting of creditors had not concluded.

On October 1, 2003, the Trustee filed a motion to approve a $35,000.00 settlement of Debtor's litigation with New York Life Insurance Co. [3]

Debtor elected, yet again, to amend Schedules B & C on October 16, 2003. *See* Doc. 156. Once again, Debtor described eight lawsuits [4] on his Schedule B. Immediately above their descriptions, he included the statement "THE VALUE OF EACH OF THESE CLAIMS IS UNKNOWN; THEY (the claims) ARE IN

**2.** All of these lawsuits are grouped together on the schedule. Debtor's typewritten description of these assets is interspersed with handwritten notations that either add corrections or additional causes of actions. As determined, these causes of actions are listed as: (1) Day v. HSS New York Supreme Court; (2) Daly v. Orthopedic Physical Therapy; (3) Daly v. New York life, (4) Daly v. Krantz; (5) Daly v. U.S. Life; (6) Daly v. Allstate Ins.; (7) Notice of claim against Commonwealth of Pennsylvania and Philadelphia's DA's Office; and (8) Daly v. Hartford.

**3.** A hearing was held December 11, 2003 on the Trustee's motion. For reasons articulated during that hearing, this Court denied the Trustee's motion without prejudice.

**4.** In a typewritten format, Debtor collectively listed these lawsuits as: (1) Daly v. HSS New York Supreme Court; (2) Daly v. Orthopedic Physical Therapy; (3) New York Life v. Daly; (4) Daly v. Krantz; (5) Daly v. U.S. Life; (6) Daly v. Allstate Ins.; (7) Notice of Claim for Commonwealth of Pennsylvania; (8) Misc. Suits: Daly v. U.S. Life, Daly v. Allstate, Daly v. Hartford. Absent from this amendment are the handwritten notations.

LITIGATION." In addition, Debtor listed "UNKNOWN" in the column labeled "Current Market Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption" with regard to the lawsuits. Identical notations were made on Schedule C with regard to the "Value of Claimed Exemption" and the "Current Value of Property Without Deducting Exemption." Debtor based these exemptions on "11 USC: 522(d)(5), 522(d)(11)(D), 522(d)(11)(E), 522(d)(10)(C), and/or 522(d)(10)(E)."

On November 13, 2003, the Trustee and New York Life Insurance Co. ("NYL") filed individual objections to Debtor's October 16, 2003 amendment.

Debtor filed responses to each objection on December 24, 2003, along with supplements to the exemptions claimed on Schedule C. These documents contained an unsigned declaration that "should this exemption Table be deemed in any way materially different from the Amendments to Exemptions filed by Debtor on October 16, 2003, then the parties are hereby placed on Notice that the debtor hereby elects, as per his right under 11 U.S.C. 1009, to exempt his property as per the exemptions and amounts herein listed." Debtor lists a total of nine lawsuits between himself and various entities. Included in this amendment is detailed information regarding each cause of action, its current procedural posture, the specific law upon which his exemption claim is based, the exemption's value and the asset's current market value.[5] With regard to the NYL litigation, Debtor listed "$675,000" as the "Value of Claimed Exemption" and "$675,000" as the "Current Market Value...." Under the column entitled "Specify Law Upon which Debtor is Relying in Claiming Exemption," Debtor lists sections 522(d)(10)(C) and 522(d)(11)(E).[6]

In response, the Trustee filed *Chapter 7 Trustee's Objections to Debtor's Amendments to Schedule C (Property Claimed as Exempt) Filed on December 24, 2003* on January 23, 2004. NYL also filed its *Motion to Strike Amendments To Claim of Exemptions Filed on December 24, 2003, or in the Alternative Objections of New York Life Insurance Company to the Exemptions Claimed by the Debtor by Amendment Filed on December 24, 2003* on January 23, 2004. Debtor filed a response to these objections on February 17, 2003.

On February 19, 2004, Debtor's counsel filed a *Praecipe to Add Unsworn Declarations* with respect to the December 24, 2003 amendment. *See* Doc. 192.

The Trustee filed a second motion requesting approval of a settlement of the NYL litigation for $35,000 on February 24, 2004.

A hearing was held on May 20, 2004 whereby testimony was taken and the parties voiced their respected positions regarding the issue. The parties were instructed to file briefs within thirty (30) days and the matter was thereafter taken under advisement.

### JURISDICTION

This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and this Court

---

5. Debtor filed an additional supplement to his October 16, 2003 filing (Doc. 218) on April 14, 2004 that included an "Addendum" to the Daly v. NYL litigation. However, the additional information did not seek to modify the claimed exemption's value or current market value.

6. Debtor filed an additional supplement to his October 16, 2003 filing (Doc. 218) on April 14, 2004 that included an "Addendum" to the NYL litigation. However, the additional information did not seek a modification to the claimed exemption's value or current market value.

has jurisdiction under 28 U.S.C. §§ 1334, 157 and Middle District of Pennsylvania Standing Order Misc. 84–0203 to render this decision.

### DISCUSSION

Subject to a few specific exceptions not relevant here, the filing of a bankruptcy petition creates an estate comprised of "all legal or equitable interest of the debtor in property as of the commencement of the case." *See* 11 U.S.C. § 541(a)(1). This includes a debtor's interest in a cause of action. *See Integrated Solutions, Inc. v. Service Support Specialties, Inc.,* 124 F.3d 487, 490 (3d Cir.1997). Section 522(b) permits a debtor to claim certain property interests exempt from administration by the trustee, either under relevant non-bankruptcy law or the federal exemptions listed in § 522(d).

Rule 4003(b) permits a trustee, or other party in interest, to file an objection to the list of property claimed as exempt within thirty days of its filing. The objector must then carry the burden of producing evidence that rebuts the presumption that the claimed exemption is valid. *See* Fed. R. Bankr.P. 4003(C); Fed.R.Evid. 301; *accord Lampe v. Williamson (In re Lampe),* 331 F.3d 750, 754 (10th Cir.2003).

Both the Trustee and NYL have filed objections to Debtor's latest amendment to his Schedule C. These objections range from technical issues involving procedural deficiencies to issues concerning the propriety of certain exemptions Debtor has claimed in particular causes of action. These objections have presented this Court with a number of issues: (1) whether this Court has the power to exercise judicial discretion and disregard a debtor's amendment of claimed exemptions; (2) whether a debtor may properly claim exemptions under both federal and relevant non-bankruptcy law; (3) whether a debtor may utilize one statutory provision to claim multiple and distinct exemptions in separate causes of actions; (4) whether certain exemptions claimed by Debtor are proper; and lastly (5) whether a debtor's claim that a specific dollar amount of an asset's value is exempted grants him the right to receive all proceeds in excess of that specific dollar amount that may flow from its liquidation. Each of these issues will turn on this Court's interpretation of specific statutory provisions and applicable procedural rules.

### I.

The Trustee's first objection focuses on Debtor's failure to include a verification or unsworn declaration, in accordance with Rule 1008 of the Federal Rules of Bankruptcy Procedure[7], with respect to

---

7. Rule 1008 states:

All petitions, lists, schedules, statements and amendments thereto shall be verified or contain an unsworn declaration as provided in 28 U.S.C. § 1746.

Section 1746 of Title 28 provides:

Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

(1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)".

his last amendment. The Trustee also takes issue with the lack of a signature from Debtor's attorney pursuant to Rule 9011. The Trustee argues that these signature requirements are not mere formal niceties and their omissions are not minor technical oversight. According to the Trustee, the inclusion of these signatures ensures the "accuracy of facts and legal legitimacy of argument before being presented to the Court." *See* Doc. 216 at 5.

Although this Court agrees with the Trustee's argument that the inclusion of these signatures is essential to the judicial process, it cannot agree with the proposition that its omission warrants striking the impaired document. This is especially true when the maligned defect was cured prior to the occurrence of any resulting prejudice. On February 19, 2004, Debtor's counsel filed a *Praecipe to Add Unsworn Declarations* with respect to the December 24, 2003 amendment. *See* Doc. 192.

■ Lastly, the Trustee's reliance on Rule 9011 is misplaced. Rule 9011(a) provides, in part:

> Every petition, pleading, written motion, and other paper, *except a list, schedule, or statement, or amendments thereto,* shall be signed by at least one attorney of record in the attorney's individual name.

Fed. R. Bankr.P. 9011(a)

It is clear from the rule's text that an attorney of record is not required to sign either a "schedule" or "amendment thereto."

The Trustee's objection is overruled.

## II.

■ Once a bankruptcy petition is filed, a debtor is required to file a series of documents that outline his financial affairs. *See* 11 U.S.C. § 521(1); Fed. R. Bankr.P. 1007(b). This includes a list of property claimed as exempt from administration. *See* Fed. R. Bankr.P. 4003(a), 1007(b)(1). Rule 1009(a) allows a debtor to amend this list "as a matter of course at any time before the case is closed." As of the hearing date, Debtor had exercised this right five times by filing amendments to his list of property claimed as exempt. Both the Trustee and NYL requests this Court to strike Debtor's most recent amendment to his Schedule C and prohibit him from filing any further amendments.

They argue in tandem that the Debtor acted in bad faith when he filed his most recent amendment resulting in prejudice to the Trustee and/or creditors. Evidence of bad faith supposedly lies in Debtor's alleged concealment of assets, the filing of a second bankruptcy in the Eastern District of Pennsylvania while the current case was pending, and an assertion that his interest in the NYL litigation is fully exempt only after the Trustee had successfully negotiated a settlement.

For support, the objectors direct this Court's attention to a concept that has emerged from a number of courts that have dealt with similar issues. First espoused by the Eleventh Circuit Court in *Doan v. Hudgins,* 672 F.2d 831, 833 (11th Cir.1982), which relied in part on the Third Circuit Court's decision in *Matter of Gershenbaum,* 598 F.2d 779 (3d Cir.1979), a number of courts have adopted the position that an amendment may be disallowed if there is evidence that it was filed in bad faith or will prejudice a creditor. *See Kaelin v. Bassett, (In re Kaelin),* 308 F.3d 885 (8th Cir.2002), *Martinson v. Michael (In*

---

(2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".

*re Michael*), 163 F.3d 526 (9th Cir.1998); *Lowe v. Sandoval (In re Sandoval)*, 103 F.3d 20 (5th Cir.1997); *Matter of Yonikus*, 996 F.2d 866 (7th Cir.1993), *Calder v. Job (In re Calder)*, 973 F.2d 862 (10th Cir. 1992); *In re Millsaps*, 774 F.2d 1163 (6th Cir.1985)(unpublished).

Although this reasoning has been accepted by a number of courts, this Court is not prepared to apply it to the pending matter. This Court concludes that a determination of whether a court can (1) deny a debtor the right to amend, or (2) strike an amendment on its face, without giving consideration to its substance, is controlled by *Gershenbaum* and the analysis employed therein.

In *Gershenbaum*, the debtor filed an application to amend his original bankruptcy petition to reflect an unlisted pre-petition debt after the discharge order had been entered but before the case was closed. *See* 598 F.2d at 781. The objecting creditor argued "that it is unfair to a creditor to permit the bankrupt to amend his petition at this late date and thereby broaden the scope of the original discharge." *See id.* at 782. Confronted with determining under Bankruptcy Rule 110, the predecessor to Rule 1009,[8] "whether a bankruptcy court, prior to the time that the bankruptcy case has been closed, may deny an application made by the bankrupt to amend his petition" the Third Circuit Court held that a bankruptcy court "does not have discretion to deny leave to amend

or to require a showing of good cause." *See id.* at 780 & 81.

In response to the creditor's arguments, the Court reasoned that:

> [the creditor] has not pointed to any prejudice which he will suffer as a result of the amendment, which he would not have incurred if his debt had been listed in the petition for bankruptcy. He has not indicated that he has changed his position during the twenty-one months which elapsed between the bankruptcy and the amendment, nor has he alleged that he was damaged by the loss of an opportunity to participate in the bankruptcy proceeding.... *It is clear that two wholly separate issues must be resolved before Gershenbaum's bankruptcy may be raised as a bar to [creditor's] claim: first, may the petition be amended and second, if it may be amended, the scope of the discharge.*

*Id.* at 782–83 (emphasis added).

Applying *Gershenbaum* to the pending matter, this Court is confronted with two questions. First, may Mr. Daly amend his list of property claimed as exempt. And secondly, if the right to amend is upheld, will the substance of his amendment have any effect in his pending bankruptcy.

█ In response to the first query, it is clear from the Third Circuit Court's strict interpretation of Rule 110 that the answer is an unqualified "yes." This Court is not willing to disregard the dictates of Rule

---

**8.** The predecessor of Rule 1009 of the Federal Rules of Bankruptcy Procedure, Bankruptcy Rule 110 stated:

A voluntary petition, schedule, or statement of affairs may be amended as a matter of course at any time before the case is closed. The court may, on application or motion of any party in interest or on its own initiative, order any voluntary petition, schedule, or statement of affairs to be amended. Every amendment under this rule shall be filed in the same number as required of the original paper, and the court shall give notice of the amendment to such persons as it may designate.

Created in 1983, the accompanied Advisory Committee Note to Rule 1009 states that "this rule continues the permissive approach adopted by former Bankruptcy Rule 110 to amendments of voluntary petitions and accompanying papers." *See* 1983 Advisory Committee Note to Fed. R. Bankr.P. 1009.

1009 and unilaterally strike an amendment. The fact remains that Rule 1009(a) vests debtors with the right to amend documents such as a list of claimed exemptions as a matter of course so long as the case is not closed.

As to the second query, whether Debtor's amendment will have any effect in his case must be measured against the applicable provisions of § 522. In the event a trustee or a party in interest believes that the debtor's claimed exemption lacks a colorable basis, Rule 4003(b) provides a party in interest with the mechanisms one must engage in when challenging an exemption's merit. Just as the Third Circuit Court recognized in *Gershenbaum*, there is a marked difference between allowing a debtor to file an amendment claiming an exemption and the allowance of that exemption. *See Sandoval*, 103 F.3d at 22.

As indicated, this Court holds that it does not possess the judicial power to deny Debtor his right to file amendments to his "voluntary petition, list, schedule, or statement" prior to the closing of his case. The Court will review any remaining issues attributed to the propriety of the claimed exemptions in light of § 522.

### III.

The Trustee also objects to Debtor's alleged reliance on both state law exemptions and those provided within the Code. In his December 24, 2003 amendment to Schedule C, Mr. Daly indicated in the column entitled "Specify Law Upon which Debtor is Relying in Claiming Exemption" the statutory provisions his exemptions are

based. For the most part, Mr. Daly only references the federal exemption provisions outlined in § 522(d). However, with respect to the property identified as "New York Life v. Daly", Mr. Daly declared, in part:

> This sum is exempted in its entirety pursuant to **11 U.S.C. § 522(d)(10)(C)** ... The Court should give Full Faith and Credit to Commonwealth Law, i.e., **42 Pa C.S.A. 8124** entitled **Exemption of Particular Property** (C) **Insurance Proceeds** ....

Doc. 175 at 4 (emphasis in original).

This statement was included under a heading entitled "11 U.S.C. 522(d)(10)(C)."

■ Under § 522(b),[9] a debtor is required to base any claimed exemption on either the federal exemptions outlined within the statute or some other under relevant non-bankruptcy law. *See e.g. Bradley v. Pacific Southwest Bank*, 960 F.2d 502, 506 n. 2 (5th Cir.1992); *In re Stone*, 119 B.R. 222, 230 (Bankr.E.D.Wash. 1990); *In re Lawson*, 45 B.R. 686, 687 (Bankr.Vt.1985). Relying on the First Circuit Court's decision in *John T. Mather Mem'l Hosp. of Port Jefferson, Inc. v. Pearl*, 723 F.2d 193 (1983), the Trustee maintains that a debtor is not permitted to claim exemptions under both the federal scheme outlined in § 522(d) and that which may be provided for under state laws. Debtor counters with the argument that his amendment clearly reflects his election of the federal bankruptcy exemption scheme. Upon review of the document in

---

**9.** Paragraphs (1) and (2) state, in relevant part:

> (1) property that is specified under subsection (d) of this section [ (federal bankruptcy exemptions) ], unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not authorize; *or, in the alternative,*

> (2)(A) *any property that is exempt under Federal law*, other than subsection (d) of this section, *or State or local law* that is applicable on the date of the filing of the petition.... 11 U.S.C. § 522(b)(1) & (2)(A) (emphasis added).

question, the Court is in agreement with Debtor.

Under the column entitled "Specify Law Upon which Debtor is Relying in Claiming Exemption", Debtor inserted headings reflecting the specific statutory provision relied upon. Debtor included the comment citing to state law under the heading "11 U.S.C. 522(d)(10)(C)." When the document is viewed as a whole, it is evident to this Court that Debtor's statement, "The Court should give Full Faith and Credit to Commonwealth Law, i.e., 42 Pa C.S.A. 8124 ...", is surplusage and pure argument and not an assertion of a exemption claim under state law. The Trustee's objection is therefore overruled.[10]

## IV.

■ The Trustee also objects to Debtor's repeated reliance on § 522(d)(11)(D) for separate causes of actions.[11] Debtor's December 24, 2003 amendment reveals that, with respect to the property described as "Daly v. HSS & Dr. Richman", his claimed exemption is based, in part, on § 522(d)(11)(D). *See* Doc. 175 at 1. This same statute was also used to claim an exemption in the properties described as "Daly v. Commonwealth" and "Daly v. Phila." *See id.* at 9. According to Mr. Daly's description, "Daly v. HSS & Dr. Richman" concerns a medical malpractice claim for damages comprising "lost wages, medical bills, past and present pain and suffering." *See id.* at 1. The causes of actions labeled as "Daly v. Commonwealth" and "Daly v. Phila." are collectively described as "bad

prison conditions, losing clothes, miscellaneous losses."

The Trustee cites the First Circuit Court's holding in *Christo v. Yellin (In re Christo)*, for the proposition that "the purpose of [section 522(d)(11)(D) ... is served by limiting it to one exemption, regardless of the number of incidents of bodily injury, because the determination of what is 'reasonably necessary' to support the debtor should not hinge on the number of injuries suffered." *See* 192 F.3d 36, 39 (1st Cir. 1999).

The Debtor opposes the Trustee's interpretation of *Christo*. Instead, he understands the First Circuit Court's holding to mean that a "debtor cannot elect to use, i.e. $15,000 for one personal injury, and then another $15,000 for an entirely different personal injury. Nowhere does it state that a debtor may not list or apply alternate exemptions for each claim." Doc. 220 at ¶ 5.

Although the Court respects the decision of the First Circuit Court in *Christo*, it does not control this Court's interpretation of § 522(d)(11)(D). This Court finds little guidance in the reasoning articulated by the majority in *Christo*. However, this Court does agree with the analysis articulated by Judge Gibson in his dissenting opinion.

Section 522(d)(11)(D) provides:

(d) The following property may be exempted under subsection (b)(1) of this section:

---

10. Likewise, the Court overrules the Trustee's objection concerning the alleged lack of specificity as to what portion of Federal Bankruptcy Law his exemptions are based. Although the Debtor's amendment is of an unorthodox form, the Court has observed no failure on Debtor's part to clearly specify the various statutory provision to which his various exemptions are based.

11. The Trustee equally applies this analysis to § 522(d)(10)(C). However, based on this Court's review of Debtor's complete list of claimed exemptions, Debtor has only asserted an exemption under § 522(d)(10)(C) with respect to the asset described as "Daly v. NYL." *Compare* Docs. 175, 156, 142 & 139.

(11) The Debtor's right to receive, or property that is traceable to—

(D) a payment, not to exceed $17,425, on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent;

11 U.S.C. § 522(d)(11)(D).

In *Christo,* the debtor had claimed three separate exemptions for three unsettled personal injury claims stemming from three separate pre-petition accidents. *See* 192 F.3d at 37. Each personal injury claim was exempted at the maximum amount then allowed under § 522(d)(11)(D), $15,000. *See id.* This equaled a total exemption of $45,000 under the statute. *See id.*

Over the dissent of Judge Gibson, the First Circuit Court affirmed the Bankruptcy Appellate Panel's (BAP) holding that a debtor is only entitled to one exemption, up to the statutory limit, for all personal injury claims. This led to the First Circuit Court conclusion "that the phrase 'on account of personal bodily injury' should be interpreted as defining the *nature* of the payment that is exempt and not the *number* of injuries suffered." *See id.* at 39 (emphasis in original). The First Circuit Court reached this conclusion in spite of the generally accepted principle that courts should construe the Code's "exemption provisions liberally to reflect their remedial purposes." *See id.* at 39. It concluded "that, in certain situations, there are reasons to afford a more narrow reading" of the Code's exemption provisions. *See id.* (internal quotations omitted). The *Christo* Court provided four reasons for its interpretation of § 522(d)(11)(D):

First, the language of the exemption in 11 U.S.C. § 522(d)(11)(D) refers to "a payment." While there is some ambiguity, the more natural reading is that

there is a single exemption. Second, the overall scheme of exemptions in § 522(d)(11) displays a pattern of allowing one exemption per category. Third, the purpose of exemptions is to provide support for the debtors at a reasonably necessary level. The reasonably necessary level should not, logically, vary to provide more in total exemption amount to someone who is in three minor accidents than one who is in a single catastrophic accident. That is particularly so given that there are the exemptions in §§ 522(d)(10)(A) and (C) for social security and disability benefits. That is, the exemption for "a payment in account of personal bodily injury" is not a proxy for degree of disability. Fourth, the reading of the exemption as limited to one $15,000 exemption more equitably treats similarly situated debtors.

*See* 192 F.3d at 38–39.

In his dissenting opinion, Senior Circuit Judge Gibson found fault with the majority's reliance on the BAP's "speculative reasoning." *See id.* at 40. Judge Gibson commented that "the BAP's opinion rests on a shaky policy foundation and ignores language in the statute that would allow separate exemptions for separate bodily injury claims." *See id.* at 40. Focusing on the grammatical analysis of § 522(d)(11)(D), Judge Gibson concluded it is equally plausible to interpret "a payment on ... account of personal bodily injury" to apply to each such payment, as it is to interpret a congressional intent to apply to an exemption of a single payment. *See id.* at 40. Judge Gibson noted:

The statute simply does not say whether "a payment ... on account of personal bodily injury" refers to one or more than one such payment. Congress could have specifically stated which of the two meanings it intended, as it did with motor vehicles [(section 522(d)(2))], and as

it did by the use of the "aggregate" [(sections 522(d)(1), (3), (4), (5), (6) and (8))]. I can only read the failure to use these restrictive terms as demonstrating an intent from the plain language of the statute that there is no such limitation and more than one such incident may be the subject of exemption.

The legislative history is of no assistance in dealing with this ambiguity. In such circumstances, we should construe the exemption liberally in favor of the debtor. (Citations omitted).

*Id.* at 40–41.

A number of courts have engaged in similar analysis as it pertains to this issue. *See e.g. In re Comeaux*, 305 B.R. 802 (Bankr.E.D.Tex.2003); *In re Marcus*, 172 B.R. 502 (Bankr.D.Conn.1994); *In re Anderson*, 932 P.2d 1110 (Okla.1997). As the *Comeaux* court held, "[i]t seems more plausible to this Court that 'a payment on . . . account of personal bodily injury' would refer to any such payment as might be received, particularly in the light of the repeatedly demonstrated ability of the Congress in § 522 to utilize numeric limits and aggregate monetary caps in order to constrict a debtor's ability to exempt property from the scope of the bankruptcy estate." 305 B.R. at 806–807. As Judge Gibson concluded in his dissent, the absence of this language reflects a legislative intent not to limit debtors to a single exemption claim under § 522(d)(11)(D).

This Court is in agreement with those cases that conclude that nothing forecloses a debtor from properly asserting multiple exemptions under § 522(d)(11)(D) for multiple property interests, which are separate and distinct. The Trustee's objection with respect to this matter is therefore overruled.

## V.

The Trustee and NYL's final objections focus on whether Debtor may properly assert exemptions in certain causes of actions with respect to §§ 522(d)(10)(E), 522(d)(10)(C) and 522(d)(11)(E).

Among the Trustee's objections, he finds fault with Debtor's reliance on certain exemption provisions as they may pertain to his interests in *Daly v. U.S. Life, Daly v. Allstate Insur. Co.,* and *NYL v. Daly.* One of the Trustee's primary contentions is that it is not proper for Debtor to utilize §§ 522(d)(10)(E), 522(d)(10)(C), and 522(d)(11)(E) as the basis of exempting his interests in causes of actions based on alleged breach of contract violations. This Court, however, takes issue with this argument.

The mere fact that there is a dispute as to the ownership of an asset does not change the nature of the exemption. The only issue the Court must concern itself with is whether an exemption has been properly claimed in any resultant recovery that may arise from the matter being litigated. The legal theories a debtor may rely upon in order to substantiate an ownership interest does not detract from his ability to assert a proper exemption claim based on his respective interest in the asset in dispute.

In reference to the present case, the fact that Debtor may have chosen to employ a breach of contract theory to legitimize his property rights in a particular asset is inconsequential. What is material to this Court's inquiry is whether the substance of any recovery he may reap from these various causes of action may be properly exempted under applicable laws.

■ Turning to the remaining objections, the Trustee further objects to Debtor's reliance on § 522(d)(10)(E) to exempt his interests in *Daly v. U.S. Life* and *Daly*

*v. Allstate.* In his December 24, 2004 amendment, Debtor describes *Daly v. U.S. Life* and *Daly v. Allstate* as breach of contract actions with regard to accidental death policies issued regarding his mother's life. He claims the total amount recovered under the policies as exempt under § 522(d)(10)(E) to the extent reasonably necessary for his support.[12]

Section 522(d)(10)(E) provides:

(d) The following property may be exempted under subsection (b)(1) of this section:

. . .

(10) The debtor's right to receive—

. . .

(E) a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—

(I) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;

(ii) such payment is on account of age or length of service; and

(iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), or 408 of the Internal Revenue Code of 1986.

11 U.S.C. § 522(d)(10)(E).

In *Rousey v. Jacoway,* the Supreme Court analyzed § 522(d)(10)(E) and interpreted "on account of" to mean that the debtor's right to receive a payment must be "because of" an illness, disability, death, age or length of service. *See* 544 U.S. 320, 125 S.Ct. 1561, 1566, 161 L.Ed.2d 563 (2005). In addition, this payment must also be a "stock bonus, pension, profitsharing, annuity, or similar plan or contract."

■ Debtor views these accidental death polices as "contract[s] on the account of death" that are "similar plans or contracts to stock bonus, pension, profitsharing, annuity." In order to be "similar", the policies "must be like, though not identical to, the specific plans or contracts listed in section 522(d)(10)(E), and consequently must share characteristics common to [profitsharing, stock bonus, pension, or an annuity]." *See* 125 S.Ct. at 1568. The Supreme Court identified these common similarities and characteristics in *Rousey:*

A "profitsharing" plan, of course, is "[a] system by which employees receive a share of the profits of a business enterprise." Am. Hert. 1045.[FN5] Profitsharing plans may provide deferred compensation, but they may also be "cash plans" in which a predetermined percentage of the profits is distributed to employees at set intervals. J. Langbein & B. Wolk, Pension and Employee Benefit Law 48 (3d ed.2000). A stock bonus plan is like a profitsharing plan, except that it distributes company stock rather than cash from profits. *Id.,* at 49.[FN6] A pension is defined as "a fixed sum ... paid under given conditions to a person following his retirement from service (as due to age or disability) or to the surviving dependents of a person entitled to such a pension." Webster's 3d 1671.[FN7] Finally, an annuity is "an amount payable yearly or at other regular intervals ... for a certain or uncertain period (as for

---

**12.** Debtor has also claimed that his interests are exempt pursuant to § 522(d)(5). The Trustee has not raised an objection to this claim/basis.

years, for life, or in perpetuity)." *Id.,* at 88. The common feature of all of these plans is that they provide income that substitutes for wages earned as salary or hourly compensation. This understanding of the plans' similarities comports with the other types of payments that a debtor may exempt under § 522(d)(10)—all of which concern income that substitutes for wages. See, *e.g.,* § 522(d)(10)(A) ("social security benefit, unemployment compensation, or a local public assistance benefit"); § 522(d)(10)(B) ("a veterans' benefit"); § 522(d)(10)(C) ("disability, illness, or unemployment benefit"); § 522(d)(10)(D) ("alimony, support, or separate maintenance").

See 125 S.Ct. at 1568–1569 (footnote references omitted).

Following the Supreme Court's approach in *Rousey,* this Court is not convinced that the accidental life insurance policies at issue share common similarities or characteristics to profitsharing, stock bonus, pension, or an annuity. The insurance policies issued on the life of Debtor's mother is not subject to the exemption provided under § 522(d)(10)(E).

Absent evidence to the contrary, an insurance policy is commonly defined as "coverage by contract whereby one party undertakes to indemnify or guarantee another against loss by a specified contingency or peril." *See Merriam–Webster Online Dictionary,* "insurance" (2005). More specifically, "life insurance" is defined as "insurance for payment of a stipulated sum to a designated beneficiary upon death of the insured." *Id.; see also Black's Law Dictionary,* "life insurance" (8th ed.2004). By definition, an insurance policy of this nature does not provide a source of income that substitutes for wages in the manner that a profitsharing, stock bonus, pension, or an annuity does.

The Code contains three separate exemptions relating to life insurance policies. *See* 11 U.S.C. §§ 522(d)(7), 522(d)(8) & 522(d)(11)(C). However, a debtor's ability to utilize these provisions is dependent on the "type" of interest being asserted. The fact that the phrase "life insurance" is specifically identified in these provisions, but not identified under § 522(d)(10)(C), demonstrates that a life insurance policy was not contemplated by Congress as the type of "similar plan" anticipated by Congress. "When Congress includes particular language in one section of a statute but omits it in another section of the same act, as a matter of statutory construction, the courts presume that Congress acted intentionally and purposely in the disparate inclusion or exclusion." *Bates v. United States,* 522 U.S. 23, 29–30, 118 S.Ct. 285, 139 L.Ed.2d 215 (1997). "It is clear that Congress has identified life insurance proceeds as something other than a payment of the type designated in section 522(d)(10)(E), and the exclusion of the phrase from section 522(d)(10)(E) was deliberate." *In re Selfe,* 260 B.R. 463, 467 (Bankr.E.D.Mo.2001).

With the exception of § 522(d)(5)'s wildcard provision, the Code does not provide a specific exemption for a debtor's right to receive a payment as a beneficiary under a life insurance policy where the debtor had not been a dependent of the insured. Debtor is therefore unable to sustain an exemption claim in his interest in *Daly v. U.S. Life* and *Daly v. Allstate* under § 522(d)(10)(E).

With regard to Debtor's interest in *NYL v. Daly,* both the Trustee and NYL objection to his use of §§ 522(d)(10)(C) and 522(d)(11)(E) as a means of claiming the property as exempt. Debtor describes his interest in *NYL v. Daly* as a counterclaim for disability bene-

fits arising out of a terminated insurance policy. He believes that his interest is exempt in its entirety under § 522(d)(10)(C) because any resultant recovery would be based on his right to receive "a disability, illness or unemployment benefit" under a disability policy and equal "the net amount payable under any accident or disability insurance." Furthermore, any verdict in his favor would be "the net amount payable under any accident or disability insurance."

Debtor equally relies on § 522(d)(11)(E) as a basis for exempting any monies recovered from his counterclaim in its entirety. He maintains that any resultant recovery would represent his loss of future earnings to the extent it is reasonably necessary for his support. Debtor reasons that these proceeds represent a loss of future earning that will be reasonably necessary to support him for the remainder of his life.

The Trustee argues that since NYL had terminated Debtor's policy pre-petition, the *NYL v. Daly* litigation does not represent Debtor's right to receive a disability benefit pursuant to § 522(d)(10)(C). Furthermore, any proceeds derived from the litigation would be a lump sum payment that would not otherwise qualify as Debtor's right to receive a future disability benefit. This Court is not persuaded by the Trustee's argument.

Like § 522(d)(10)(E), a benefit received in accordance to § 522(d)(10)(C) is viewed as a form of income that substitutes for wages. *See Rousey*, 125 S.Ct. at 1569. Section 522(d)(10)(C) provides, in part:

(d) The following property may be exempted under subsection (b)(1) of this section:

. . .

(10) The debtor's right to receive—

. . .

(C) a disability, illness, or unemployment benefit;

11 U.S.C. § 522(d)(10)(C).

It is clear from the Trustee's objection that he raises no issue with the intended purpose of the insurance policy; merely whether Debtor possesses a present right to receive a disability benefit provided for under the policy. The Court takes exception to the Trustee's arguments.

The Court first notes that the pre-petition termination of the insurance policy is immaterial. The sole purpose of Debtor's pre-petition lawsuit is that he is attempting to reap whatever present rights he may possess under the policy to receive a disability benefit and not a right to receive them at some point in time in the future. *Compare Clark v. O'Neill (In re Clark)*, 711 F.2d 21 (3d Cir.1983)(Third Circuit Court held that debtor did not hold a present "right to receive" future payments from a retirement plan).

Secondly, this Court's reading of § 522(d)(10)(C) is not identical to the Trustee's. Nothing within the unambiguous language of the section indicates a congressional intent to foreclose a debtor's "right to receive" a disability benefit as a lump sum payment versus some type of continual stream of future payments. It is also premature for this Court to assume that any recovery Debtor may receive from the *NYL v. Daly* litigation would naturally take the form of a lump sum payment. The only issue relevant to Debtor's reliance on § 522(d)(10)(C) is whether his recovery actually represents a disability payment. To the extent that it does, the Court finds Debtor's exemption claim to be proper.

The Court finds NYL's argument to be equally unpersuasive. It argues that the Third Circuit Court's decision in *Clark v.*

*O'Neill* (*In re Clark*), 711 F.2d 21 (3d Cir.1983), forecloses him from claiming the *NYL v. Daly* litigation as exempt under § 522(d)(10)(C). More specifically, NYL maintains that *Clark* limits a debtor's ability to assert an exemption in a "right to receive" payments under § 522(d)(10) if they are, in fact, currently being received. This Court, however, takes issue with this argument.

In *Clark,* the Third Circuit Court dealt with the issue of whether a debtor could utilize § 522(d)(10)(E) to exempt his interest in future payments from a retirement plan. Relying on legislative history, the Court noted that the historical purpose of exemption laws has been to "to provide [debtors] with the basic necessities of life so that even if [their] creditors levy on all of [their] nonexempt property, [debtors] will not be left destitute and a public charge." *See id.* at 23. From this passage, the Court reasoned that "the present Keogh payments, to the extent they are necessary for the support of the debtor, is consistent with this goal. The exemption of *future* payments, however, demonstrates a concern for the debtor's long-term security which is absent from the statute." *See id.* (emphasis in original).

Although this Court may be bound to certain aspects of the Third Circuit Court's holding in *Clark,* this Court does not find it to be on point in the present situation. Unlike the debtor in *Clark,* what *is* at issue in *NYL v. Daly* is whether Debtor possesses a present "right to receive" the benefits provided for under the policy. The fact that the policy was terminated pre-petition is immaterial to the inquiry. The sole purpose of Debtor's pending pre-petition counterclaim is to reap whatever present rights he may possess under the policy to receive a disability benefit and not whether he possesses a right to receive them on some future date. These objections are overruled.

The Trustee and NYL express concerns whether Debtor may claim *NYL v. Daly* as exempt based on § 522(d)(11)(E). Section 522(d)(11)(E) permits a debtor to exempt a right to receive a payment, or property traceable to a payment, that is "in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." Having allowed the exemption of this asset under § 522(d)(10)(C), the court need not address the application of this exemption section to the same claim.

Whether or not Debtor's counterclaim has merit is not relevant to a determination as to whether his exemption claims are proper. Issues concerning Debtor's interest in the insurance policy are currently pending in the District Court for the Eastern District of Pennsylvania. In the event the Debtor recovers on his counterclaim, his interest in *NYL v. Daly* is properly exempt under § 522(d)(10)(C).

## VI.

■ The final issue affecting the present proceedings was raised *sua sponte* and concerns the legal effect of a debtor exempting the entire reported value of an asset. More specifically, is a debtor limited to the specific dollar amount claimed as exempt, regardless of an asset's reported or court determined value?

Several courts have reflected upon this issue and different conclusions have developed. *See e.g. Allen v. Green* (*In re Green*), 31 F.3d 1098 (11th Cir.1994); *Soost v. NAH, Inc.* (*In re Soost*), 262 B.R. 68 (8th Cir. BAP 2001); *In re James,* 260 B.R. 368 (Bankr.E.D.N.C.2001); *In re Forti,* 224 B.R. 323 (Bankr.D.Md.1998); *In re Bregni,* 215 B.R. 850 (Bankr.E.D.Mich. 1997); *Addison v. Reavis,* 158 B.R. 53 (E.D.Va.1993), *aff'd* 32 F.3d 562 (4th Cir. 1994). Each of these decisions are based,

to some degree, on the Supreme Court's decision in *Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). In *Taylor,* the Court was confronted with the issue of whether a debtor is entitled to an improperly claimed exemption that fails to draw an objection. *See id.* at 642, 112 S.Ct. 1644. On her schedules, the debtor claimed an exemption in an award she had expected to win in a discrimination lawsuit against TWA. *See id.* at 640, 112 S.Ct. 1644. This property was described as "Proceeds from lawsuit—*[Davis] v. TWA*" and "Claim for lost wages." *See id.* Both its value and exemption value were listed as "unknown" on the applicable schedules. *See Taylor v. Freeland & Kronz,* 938 F.2d 420, 421 (3d Cir.1991). The Court went on to hold that a party cannot contest the validity of a claimed exemption after the expiration of the objection period. *See* 503 U.S. at 643, 112 S.Ct. 1644.

However, another part of the Supreme Court's decision is more pertinent to this Court's resolution of the pending issue. With regard to the legal significance associated with the debtor's declaration that both the property's value and exemption value were "unknown", the Court noted (or one could say concluded) that the debtor had "claimed the proceeds from her employment discrimination lawsuit as exempt by listing them in the schedule that she filed under § 522(*l*).... [The debtor] in fact claimed the full amount as exempt." *See* 503 U.S. at 642, 112 S.Ct. 1644. It is obvious from these statements that the Supreme Court interprets such a declaration, an asset with a listed value as "unknown" and a corresponding exemption value of "unknown", to mean that a debtor has asserted an exemption claim against 100% of the asset's ultimate value.

Post-*Taylor,* the Eleventh Circuit Court addressed a similar fact pattern in *Allen v. Green. See* 31 F.3d at 1098. However in *Green,* the Eleventh Circuit Court was asked to determine the legal significance attached to debtor's exemption of $1.00 in a lawsuit with a listed value of $1.00. *See id.* 31 F.3d at 1099. As with the trustee in *Taylor,* the trustee in *Green* elected not to object to either the debtor's valuation or exemption. *See id.* The trustee eventually arranged to settle the lawsuit for $15,000.00, which the debtor consented to and the bankruptcy court approved. *See id.* The bankruptcy court also denied the debtor's request to receive settlement proceeds in excess of the exempted amount. This ruling was reversed by the district court based on the Supreme Court's holding in *Taylor* and the matter was appealed to the Eleventh Circuit Court. *See id.* On appeal, the trustee argued the estate was entitled to all but $1.00 of the settlement proceeds since the debtor had only claimed an exemption of $1.00. *See id.*

In reaching its decision, the Eleventh Circuit Court reviewed *Taylor* and concluded that:

"an unstated premise of the Court's holding was that a debtor who exempts the entire reported value of an asset is claiming the 'full amount,' whatever it turns out to be." ... In the present case, Green exempted the full reported value of her lawsuit, and neither the Trustee nor any other interested party objected. The only factual distinction between this case and *Taylor* is that here, instead of reporting her lawsuit as having an "unknown" value, Green reported it as having a value of one dollar ... Thus, the facts of this case are materially the same as those in *Taylor.* In this case, one dollar exempted is to one dollar reported as, in *Taylor,* "unknown" exempted was to "unknown" reported.

*See id.* at 1100.

This Court is inclined to follow the Eleventh Circuit's well-reasoned interpretation

of *Taylor*. This Court's decision not to follow contrary opinions is predicated on the Supreme Court's statement in *Taylor* that a debtor's declaration that an exemption claim of "unknown" value is asserted against property interest of an "unknown" value is to be interpreted as a debtor's claim that 100% of the value of the property interest is being claimed as exempt. Accordingly, this Court concludes that in those instances where Debtor's exemption schedules reflect an exemption amount equal to the property's listed value amount, he has attempted to exempt 100% of his property interest—regardless of the property's ultimate valuation amount. As such, the Court concludes Debtor's interest in *NYL v. Daly* is exempt in its entirety under § 522(d)(10)(C) to the extent it represents a disability benefit.

An Order will follow.

### ORDER

For the reasons indicated in the Opinion filed this same date, **IT IS HEREBY**

**ORDERED** that New York Life Insurance Company's *Motion to Strike Amendments To Claim of Exemptions Filed on December 23, 2003, or in the Alternative Objections of New York Life Insurance Company to the Exemptions Claimed by the Debtor by Amendment Filed on December 24, 2003* (Doc. # 180) is **OVERRULED** in its entirety.

The Court hereby **GRANTS** the Trustee's *Chapter 7 Trustee's Objections to Debtor's Amendments to Schedule C (Property Claimed as Exempt) Filed on December 24, 2003* (Doc. # 178) with respect to Debtor's reliance on 11 U.S.C. § 522(d)(10)(E) to exempt his interest in *Daly v. U.S. Life* and *Daly v. Allstate*. The Trustee's remaining objections are **OVERRULED.**

### ORDER

In accordance with the reasoning articulated in the Opinion issued this date regarding *Chapter 7 Trustee's Objections to Debtor's Amendments to Schedule C (Property Claimed as Exempt) Filed on December 24, 2003* (Doc. # 178) and *Motion to Strike Amendments To Claim of Exemptions Filed on December 23, 2003, or in the Alternative Objections of New York Life Insurance Company to the Exemptions Claimed by the Debtor by Amendment Filed on December 24, 2003* (Doc. # 180), **IT IS HEREBY**

**ORDERED** that the *Second Motion of Chapter 7 Trustee to Compromise Claim of the Bankruptcy Estate* (Doc. # 194) is hereby **DENIED** inasmuch as the claim has been exempted by the Debtor and the Estate has no interest in same.