Jorge Barroso HERRANS, Madeline O. Rosario Farrulla, Debtors–Appellants,

v.

Wigberto Lugo MENDER, Trustee–Appellee.

No. 06–1072(JAG).
Bankruptcy No. 99–11662.

United States District Court, D. Puerto Rico.

March 15, 2007.

Fernando E. Longo–Quinones, Berrios & Longo, PSC, Carmen D. Conde–Torres, C. Conde & Associates, San Juan, PR, for Debtors–Appellants.

Luisa S. Valle–Castro, C. Conde & Associates, San Juan, PR, for Trustee–Appellee.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Pending before the Court is Jorge Barroso and Madeline O. Rosario's ("Debtors") appeal from an opinion and order of the United States Bankruptcy Court for the District of Puerto Rico. (Docket No. 10). On May 4, 2006, this appeal was referred to a Magistrate Judge. On November 18, 2006 the Magistrate Judge issued a report and recommendation to affirm the decision of the Bankruptcy Court. (Docket No. 34). For the reasons set forth below, the Magistrate–Judge's report and recommendation is adopted in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

Debtors were the sole shareholders of Powertronics Electrical and Mechanical Contractors, Inc. ("Powertronics"). This corporation was dissolved on August 24, 1999 due to the insolvency caused by the Puerto Rico Aqueducts and Sewer Authority's ("PRASA") alleged breach of two construction contracts. (Bankruptcy Court Docket No. 122, app. 3).

On August 30, 1999, Powertronics, Debtors and their conjugal partnership filed two complaints in the Puerto Rico Court of First Instance (San Juan Part) against PRASA for two projects located at Punta Santiago (KAC 99–1225) and Aguas Claras (KAC 99–1226). (Dockets Nos. 27–3, at 13; 27–4, at 18.) Both complaints comprised three causes of action: 1) breach of contractual obligations and corporate damages, 2) personal damages of Debtors for their economic loss and financial distress and 3) accounts receivable of Powertronics. On that same date, Powertronics, Debtors and their conjugal partnership filed a voluntary petition for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code. (Bankruptcy Court Docket No. 1). The same day Debtors filed for bankruptcy protection, the United States appointed Wigberto Lugo Mender, Esq., ("the Trustee") to act as a the Chapter 7 Trustee. (Bankruptcy Court Docket No. 2). On September 20, 1999, Debtors filed their Schedules and Statement of Financial Affairs. In Schedule B–15, Debtors filed two accounts receivable owed by PRASA to Powertronics identifying them as Punta Santiago, $102,843.21 and Aguas Claras, $67,608.98. Debtors placed a value on each law suit at $4000 in their filing of Schedule B–20. In Schedule C, Debtors claimed an exemption of $4000 for each case, pursuant to 11 U.S.C. § 522(d)(5). The Trustee did not file objections to these exemptions. (Bankruptcy Court Docket No. 5).

On December 5, 2002, the Trustee informed the Bankruptcy Court that it had reached an agreement with PRASA for the settlement and the liquidation of the two cases before the State Court. The settlement agreement stipulated an amount of

$50,000 for each case. (Bankruptcy Court Docket Nos. 120 and 121). The Bankruptcy Court approved the agreement, which settled both suits for $100,000. The Trustee stated that he would deliver $8000 of the settlement's proceeds to Debtor in full satisfaction of their claimed exemptions. (Bankruptcy Docket No. 182).

On October 17, 2005, the United States Bankruptcy Court for the District of Puerto Rico issued an opinion and order regarding several contested matters between Debtors and the Trustee. The opinion and order of the Bankruptcy Court concluded that: 1) the circumstances of the case show Debtors undervalued the suits when listing the assets as contingent claims with a market value of $4,000 each; 2) the exemptions claimed in Schedule C do not cover the entire market value of the suits listed both as contingent claims and accounts receivable, and are limited to Debtors' $8,000 interest in the assets; 3) the suits listed as assets under contingent claims were property of the estate and were not removed from the estate and the administration by the Trustee, by the exemption claimed by Debtors; 4) the Trustee had no reason to object to the exemptions; 5) the Trustee can administer the suits listed as contingent claims and has the authority to settle these claims subject to Court approval; 6) the Bankruptcy Court has jurisdiction to approve the settlement and approve the agreement; and 7) Debtors do not have a right to try this equitable matter before a jury. (Bankruptcy Court Docket No. 182).

On October 28, 2005, Debtors filed their Notice of Appeal (Bankruptcy Court Docket No. 184) and filed their brief on March 8, 2006. (Docket No. 10). Appellants' reply brief was filed on June 7, 2006, and a supplemental motion was filed on June 9, 2006. (Docket Nos. 28 and 29). On April 24, 2006, the Trustee's brief was filed and his sur-reply brief was filed on June 29, 2006. (Docket Nos. 15 and 32).

On May 4, 2006, Debtors' appeal was referred to Chief Magistrate Judge Justo Arenas. (Docket No. 24). On November 18, 2006 the Magistrate Judge issued its Report and Recommendation, to affirm the decision of the Bankruptcy Court. The Report and Recommendation narrowed down Debtors' appeal to three main issues of law: 1) whether the Bankruptcy Court correctly concluded that the suits against PRASA, which were listed by the Debtors in their Schedules, are property of the estate and were not removed from the estate by the exemption claimed by the Debtors over both law suits; 2) whether the Bankruptcy Court correctly concluded that the Debtors do not have the right to have this equitable matter (the claim for exemption over an asset under bankruptcy law) tried before a jury; and 3) whether the Bankruptcy Court correctly concluded that counsel for the Trustee did not have an actual or potential undisclosed conflict of interest, which mandated her disqualification.

Regarding the first issue, the Magistrate Judge concluded that the suits against PRASA were property of the estate because they were corporate causes of action that involved the outstanding accounts receivables of Powertronics. The Report and Recommendation determined that Debtors $8,000 exemption was only for their personal damages and did not constitute an exemption over Powertronic's accounts receivable. The Magistrate Judge determined that Powertronic's accounts receivable were not part of Debtor's personal property. The Magistrate Judge also determined that a Debtor is precluded from asserting a right to trial by jury, when the issue concerns a core proceeding equitable in nature. The Report and Recommendation concluded that

the exemption issued decided by the Bankruptcy Court was a core proceeding that was equitable in nature under the sole authority of the Bankruptcy Court. Consequently, the Magistrate Judge stated that Debtors were estopped from asserting a right to trial by jury. Finally, the Report and Recommendation concluded that counsel for Trustee had no actual or potential conflict of interest. (Docket No. 34).

On December 5, 2006, Debtors filed their objection to the Magistrate's Report and Recommendation. Debtors did not object to the Report and Recommendation's finding that counsel for the Trustee had no potential or actual conflict of interest. (Docket No. 35). On December 20, 2006, the Trustee filed "Appellee's Position on Appellants' Opposition to the Magistrate's Report and Recommendations" which states the Trustee's position regarding the objections raised by Debtors. (Docket No. 36).

## STANDARD OF REVIEW

1) *Standard for Reviewing a Magistrate–Judge's Report and Recommendation*

Pursuant to 28 U.S.C. §§ 636(b)(1)(B); Fed.R.Civ.P. 72(b); and Local Rule 503; a District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. *See Alamo Rodriguez v. Pfizer Pharmaceuticals, Inc.*, 286 F.Supp.2d 144, 146 (D.P.R. 2003). The adversely affected party may "contest the Magistrate Judge's report and recommendation by filing objections 'within ten days of being served' with a copy of the order." *United States of America v. Mercado Pagan*, 286 F.Supp.2d 231, 233 (D.P.R.2003) (quoting 28 U.S.C. §§ 636(b)(1)). If objections are timely filed, the District Judge shall "make a de novo determination of those portions of the report or specified findings or recommendation to which [an] objection is made." *Rivera de Leon v. Maxon Eng'g Servs.*, 283 F.Supp.2d 550, 555 (D.P.R. 2003). The Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate", however, if the affected party fails to timely file objections, "the District Court can assume that they have agreed to the magistrate's recommendation'." *Alamo Rodriguez*, 286 F.Supp.2d at 146 (quoting *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir.1985)).

## DISCUSSION

1) *"Clearly Erroneous" Test*

Debtors object to the Standard of Review adopted by the Report and Recommendation. The Report and Recommendation adopted the "clearly erroneous" test to review the findings of facts made by the Bankruptcy Court. Debtors argue that the applicable standard is the "de novo" test. The Court disagrees.

Appellate Bankruptcy Courts generally apply the clearly erroneous standard to findings of fact and de novo review to conclusions of law. *Marrama v. Citizens Bank of Mass.*, 313 B.R. 525, 529 (1st Cir. BAP 2004). "The more fact-dominated the question, the more likely it is that the trier's resolution of it will be accepted unless shown to be clearly erroneous." *In re Extradition of Howard*, 996 F.2d 1320, 1328 (1st Cir.1993); *see also In re Diaz*, 261 B.R. 546, 548 (D.P.R.2001). The Bankruptcy Court's findings will be considered clearly erroneous if, after a review of the entire record, there is a definite and firm conviction that a mistake has been committed. *Bezanson v. Thomas*, 402 F.3d 257, 264 (1st Cir.2005); *In re Watman*, 301 F.3d 3, 8 (1st Cir.2002). District Courts hearing bankruptcy appeals give

considerable deference to a Bankruptcy Judge's factual determinations and discretionary judgments. *In re Diaz*, 261 B.R. 546, 548–549 (D.P.R.2001). As a result, where there are two plausible views of the evidence, the interpretation assigned by the lower Court must be adopted. *Williams v. Poulos*, 11 F.3d 271, 278 (1st Cir.1993).

■ The clearly erroneous standard ordinarily applies when reviewing a trial Court's resolution of mixed questions of law and fact. *Id.* In such cases, the Appellate Court must determine whether the Bankruptcy Court's decision was infected by legal error. *Id.* Thus, the application of the Bankruptcy Code to a particular case, which poses a mixed question of law and fact is subject to review for clear error unless the Bankruptcy Court's analysis was infected by legal error or based on a mistaken impression of applicable legal principles. *In re Independent Eng'g Co.*, 197 F.3d 13, 16 (1st Cir.1999).

■ Generally speaking, a proceeding which "arises under" the bankruptcy laws is considered core. See 28 U.S.C. § 157(b)(1); *In re Tully*, 818 F.2d 106, 108 (1st Cir.1987); *In re Sheridan*, 362 F.3d 96, 106 (1st Cir.2004). "Related to" actions are non-core. "Determination of what is core and what is non-core has not always been easy ... '[A] procedure is core ... if it invokes a substantive right provided by title 11 or if it is a procedure that, by its nature, could arise only in the context of a bankruptcy case.'" *In re Palmer Trucking Co.*, 201 B.R. 9, 17 (Bankr.D.Mass.1996) quoting *Ralls v. Docktor Pet Ctrs., Inc.*, 177 B.R. 420, 424 (D.Mass.1995). A core proceeding, unlike its non-core counterpart, "relates to a function essential to the administration of the bankruptcy case." *Sheridan*, 362 F.3d at 106. "If the proceeding, by its nature, arises only within the bankruptcy context because it involves a right created by federal bankruptcy law, then it is a core proceeding." *In re Scotland Guard Servs.*, 179 B.R. 764, 766–67 (Bankr.D.P.R.1993)

■ The distinction between core and non-core proceedings has a significant impact on the standard of review that is applied by both the District Court and the Court of Appeals. See *In re Bank of New England Corp.*, 364 F.3d at 361. "Bankruptcy Rules 7052 and 8013, which require the application of the clearly erroneous standard to a Bankruptcy Court's findings of fact, are constitutional as applied to core proceedings." *Briden v. Foley*, 776 F.2d 379, 381 (1st Cir.1985). Thus, in reviewing a Bankruptcy Court's determination of a core proceeding, that Court's findings of fact will be accepted by the District Court unless clearly erroneous. *In re Tully*, 818 F.2d 106, 108 (1st Cir.1987). Nonetheless, a core proceeding's conclusion of law is reviewed de novo. *In re Bank of New England Corp.*, 364 F.3d 355, 361 (1st Cir. 2004). Basically, in a review of a core proceeding, the District Court must look directly to the Bankruptcy Court's decision, examining that Court's findings of fact for clear error and its conclusions of law de novo. See *In re Bank of New England Corp.*, 364 F.3d at 361.

■ In the present case, the core issue is the extent of an exemption claimed by Debtors over an asset of the estate and the authority of the Trustee to administer it. This issue concerns a core proceeding because it relates directly to the administration of the estate. Consonant with prior First Circuit rulings, the finding of facts made by the Bankruptcy Court must be reviewed utilizing the "clearly erroneous" test and the conclusion of laws shall be reviewed de novo. Therefore, the standard applied by the Magistrate Judge is correct.

2) *Approval of the Settlement*

Debtors also object to the Magistrate Judge's finding that the causes of action against PRASA were property of the estate and thus, not subject to the exemptions claimed by the Debtors. The Magistrate Judge concluded that there were separate causes of action for Powertronic's corporate damages and collection of accounts receivable, and for Debtors' personal and individual damages claim. Debtors claim that all of the causes of actions belong to them in their individual capacity upon the dissolution of Powertronics and that all of the causes of action against PRASA were included in the exemptions claimed before the Bankruptcy Court. This Court agrees with the Magistrate Judge's determination that the causes of action that refer to the corporate damages or for payment to the corporation of accounts receivable are property of the estate and thus, not subject to the exemptions claimed by Debtors.

When a debtor files a bankruptcy petition its property becomes part of the bankruptcy estate. 11 U.S.C. § 541. The debtor can file a list of property that he claims as exempt. 11 U.S.C. § 522(*l*). The property claimed as exempt on such list is not part of the estate unless a party in interest objects. *Id.* The Trustee may file objections to the list of property claimed as exempt within the 30 days after the meeting of creditors. Fed. R. of Bankr.P. 4003(b). If the trustee does not object to the debtor's claimed exemptions within the 30 day period, he is precluded from challenging the exemptions. *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).

However, when a debtor takes an exemption in a particular asset pursuant to section 522, the "property claimed as exempt" within the meaning of section 522 is merely an interest in property not to exceed a specified value. *See* 11 U.S.C. § 522(d)(5); *Owen v. Owen*, 500 U.S. 305, 310, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991) ("Most of the federally listed exemptions (set forth in section 522(d)) are explicitly restricted to the 'debtor's aggregate interest' or the 'debtor's interest' up to a maximum amount."). Accordingly, where the value of an asset exceeds the amount of the claimed exemption, the asset as a whole does not become exempt. *See Wissman v. Pittsburgh Nat'l Bank*, 942 F.2d 867, 871 (4th Cir.1991) ("We do not agree ... that by claiming [as exempt] a value less than the statutory maximum, or no value at all, as in this case, the entire property becomes exempt."). Instead, only a partial interest representing a certain amount of the asset's value is exempted. *In re Soost*, 262 B.R. 68, 72 (8th Cir.BAP2001). Specifically, the exempted interest has a value that is equal to the amount of the claimed exemption. *Id.* Under these circumstances, the bankruptcy estate retains an interest in the subject asset because only a partial interest has been exempted by the debtor. *See In re Gaylor*, 123 B.R. 236, 239 (Bankr. E.D.Mich.1991) (the debtor's property remains property of the bankruptcy estate to the extent its value exceeds the amount of the debtor's exemption) (citations omitted). Thus, claiming an exemption in an asset does not necessarily preclude administration of that asset by the Trustee in bankruptcy. *In re Soost*, 262 B.R. at 72.

In the case at bar, Debtors cite *Taylor* to support their argument that the law suits against PRASA were exempt. In *Taylor* the Debtor listed all of the future proceeds from an employee discrimination lawsuit in the schedule filed under section 522. *Taylor*, 503 U.S. at 642, 112 S.Ct. 1644. The debtors listed the value of these exceptions as "unknown." *Id.* at 640, 112 S.Ct. 1644. The Supreme Court

interpreted such a declaration, an asset with a listed value as "unknown" and a corresponding exemption value of "unknown", to mean that the debtor asserted an exemption claim against 100% of the asset's ultimate value. *Id.* at 642, 112 S.Ct. 1644; *see also In re Daly*, 344 B.R. 304, 320 (Bankr.D.Pa.2005).

In *In re Green*, 31 F.3d 1098 (11th Cir. 1994) the Eleventh Circuit addressed a similar fact pattern to that of *Taylor*. In said case, the debtor exempted the full value of her lawsuit and neither the Trustee nor any other interested party objected. *Id.* at 1100. However, the only factual distinction between *In re Green* and *Taylor* is that the debtor reported her lawsuit as having a value of one dollar instead of stating that it had an "unknown" value. *Id.* Nonetheless, the Court stated that the one dollar value signified an asset with a contingent value and that the Trustee was not mislead into thinking that the lawsuit claim was worth one dollar. *Id.* Consequently, the Court concluded that the debtor exempted the full value of her lawsuit. *Id.*

■ Thus, a debtor's declaration that an exemption claim of "unknown" value is asserted against property interest of an "unknown" value is to be interpreted as a debtor's claim that 100% of the value of the property interest is being claimed as exempt. *Taylor*, 503 U.S. at 642, 112 S.Ct. 1644; *In re Green*, 31 F.3d at 1100; *In re Daly*, 344 B.R. at 321. Accordingly, in those instances where Debtor's exemption schedules reflect an exemption amount equal to the property's listed value amount, he has attempted to exempt 100%

of his property interest regardless of the property's ultimate valuation amount. *In re Daly*, 344 B.R. at 321.

In the present case, Debtors scheduled the PRASA suits under two categories and then only claimed an exemption of $8,000 for both lawsuits as personal property. Debtors claim that they were uncertain of the value and fate of the causes of action and decided to furnish each of them with a market value of $4,000. There is a substantial difference between the schedule market value of $8,000 and the amount claimed in the lawsuits.[1] Nonetheless, the claimed exemptions were within the amount provided by section 522(d)(5).[2]

■ Unlike *Taylor*, Debtors did not list the value of the lawsuits against PRASA as "unknown". Moreover, the fact that Debtors assigned a $8,000 value to the two lawsuits, whose listed combined market value was of $170,452.19, cannot be interpreted to signify that Debtors intended to exempt 100% of the value of said lawsuits. The assigned $8,000 market is not a nominal amount that equates to an exemption claim against 100% of the asset's ultimate value.

Pursuant to section 522(d)(5), the claimed exemptions pertain to Debtors personal damages as asserted in the complaints against PRASA. The rest of the value of the lawsuits correspond to Powertronics's breach of contract claim against PRASA and Powertronic's accounts receivable owed by PRASA. This conclusion is in accordance with the determinations of

1. Debtors scheduled the suits against PRASA in Aguas Claras and Punta Santiago with the values of $102,843.21 and $67,608.98, respectively. (Bankruptcy Court Docket No. 5, at 10).

2. At the time the bankruptcy petition was filed, section 522(d)(5) allowed an exemption of "debtor's aggregate interest in any property, not to exceed in value $850 plus up to $8,075 of any unused amount" of the homestead exemption of section 522(d)(1). 11 U.S.C. § 522 (1999).

the Bankruptcy Court and the Magistrate Judge's Report and Recommendation.

Upon a review of the PRASA complaints, it can be noted that Debtors specifically included Powertronics as a Plaintiff with a separate identity from themselves. In the state court complaints, Debtors do not contend they are entitled to the totality of the proceeds claimed in the lawsuits, on the contrary, they request separate and distinct remedies for Powertronics and for them in their individual capacity. Furthermore, Debtors scheduled the suits under two categories and then only requested an exemption as personal property and not under the accounts receivable category, which was the other category where Debtors claimed both lawsuits. Consequently, in accordance with the Magistrate Judge's Report and Recommendation, this Court concludes that the PRASA lawsuits were part of the outstanding accounts receivable of Powertronics and that Debtors could only file exemptions in their schedules for their alleged personal damages.

Thus, Debtor's $8,000 claimed exemptions only represent a partial interest of the whole value of the PRASA lawsuits. The bankruptcy estate retains an interest in the PRASA lawsuits because only a partial interest has been exempted by the debtor. As a result, the rest of the value of the PRASA lawsuits, which refer to the corporate damages for breach of contract and for payments to the corporation of accounts receivable are property of the estate.

### 3) Right to Trial by Jury

Debtors also object to the Magistrate Judge's determination to reaffirm the correctness of the Bankruptcy Court's ruling that they were not entitled to a trial by jury. Debtors allege that the Magistrate–Judge's finding regarding their right to trial by jury was erroneous because the matter was not heard by the Bankruptcy Court through an adversary proceeding. This Court disagrees with Debtor's position.

 The right of trial by jury provided by the Seventh Amendment is considered an absolute right but it does not extend to cases of equity jurisdiction. *Katchen v. Landy*, 382 U.S. 323, 337, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) (internal quotations omitted). A party is entitled to a trial by jury in actions that relate to remedies at law. *See Ross v. Bernhard*, 396 U.S. 531, 533, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970). However, if it is an action in equity the trial Court may dispose of the claim without affording the right of a trial by jury. *Id.* If it is conceded or clearly shown that a case is one of equity jurisdiction, "the trial of questions involved in it belongs to the court itself, no matter what may be its importance or complexity." *Id.* In bankruptcy cases, "many incidental questions arise in the course of administering the bankrupt estate, which would ordinarily be pure cases at law, and in respect of their facts triable by jury, but, as belonging to the bankruptcy proceedings, they become cases over which the bankruptcy court, which acts as a court of equity, exercises exclusive control." *Muratore v. Darr*, 375 F.3d 140, 143 (1st Cir.2004)(citing *Barton v. Barbour*, 104 U.S. 126, 134, 26 L.Ed. 672 (1881)); *see also Landy*, 382 U.S. at 337, 86 S.Ct. 467.

It is important to note that the Supreme Court and the First Circuit have yet to determine if there is a constitutional impediment to granting trial by jury in bankruptcy proceedings that relate to core matters. *In re Dooley Plastic Co.*, 182 B.R. 73, 78 (D.Mass.1994). The Second Circuit was the first to address the question. *In*

re Ben Cooper, Inc., 896 F.2d 1394 (2nd Cir.1990), cert. granted, 497 U.S. 1023, 110 S.Ct. 3269, 111 L.Ed.2d 779 (1990), judgment vacated and remanded, 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), opinion reinstated, 924 F.2d 36 (2d Cir. 1991), cert. denied, 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991). The Second Circuit held that "the bankruptcy courts may conduct jury trials in core proceedings." In Re Ben Cooper, 896 F.2d at 1402. The Eighth Circuit was the next Court to take on the question of whether jury trials may be had in the Bankruptcy Court. The Eighth Circuit rejected the Second Circuit's determination and held that a Bankruptcy Court could not conduct jury trials in core proceedings. See In re United Mo. Bank, N.A., 901 F.2d 1449, 1454–1456 (8th Cir.1990). Every other circuit addressing the question of jury trials in bankruptcy courts has followed the Eighth Circuit and has rejected the reasoning of the Second Circuit. See In re Kaiser Steel Corp., 911 F.2d 380 (10th Cir.1990); In re Baker & Getty Financial Services, Inc., 954 F.2d 1169 (6th Cir. 1992); Matter of Grabill Corp., 967 F.2d 1152 (7th Cir.1992); In re Stansbury Poplar Place, Inc., 13 F.3d 122 (4th Cir.1993); In re Clay, 35 F.3d 190 (5th Cir.1994). In In re Dooley Plastic Co., 182 B.R. 73, 79 (D.Mass.1994) the United States District Court for the District Massachusetts also determined that Bankruptcy Courts could

not conduct jury trials in core proceedings. Moreover, a majority of the Bankruptcy Courts in the First Circuit have held that there is no right to trial by jury in bankruptcy proceedings. See In re Aaron Gleich, Inc., 200 B.R. 464 (Bankr.D.Me. 1996); In re Scotland Guard Servs., 179 B.R. 764, 768 (Bankr.D.P.R.1993); Braunstein v. Dickinson, 156 B.R. 111, 112 (Bankr.D.Mass.1993).

There are several reasons why the majority of Court of Appeals and District Courts have held that there is no right to trial by jury in bankruptcy proceedings. First, a literal reading of 28 U.S.C. § 157(b)(1), which provides that "bankruptcy judges may hear and determine all cases," has been interpreted to signify that Congress granted these judges the personal power to hear these cases, and did not implicitly authorize them to delegate this power to a Jury. In re Kaiser Steel Corp., 911 F.2d 380, 391 (10th Cir.1990). Second, no present Bankruptcy Rule provides for jury trials. In Re Baker & Getty Financial Services, Inc., 954 F.2d 1169, 1173 (6th Cir.1992); Matter of Grabill Corp., 967 F.2d 1152, 1155 (7th Cir.1992). Formerly, the Bankruptcy Rules did provide a procedure for jury trials, but the rule was repealed after the decision in Northern Pipeline Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).[3] Id. Third, Congress intended the

---

3. In Marathon, the Supreme Court ruled that Congress had overstepped Article III in its enactment of the Bankruptcy Act of 1978, 28 U.S.C. § 1471. The 1978 Act had made significant changes in the substantive and procedural law of bankruptcy. It vested the judges of the bankruptcy courts with all of the "powers of a court of equity, law and admiralty." Marathon, 458 U.S. at 55, 102 S.Ct. 2858. In addition, the Act granted bankruptcy judges the power to hold jury trials. Id.

In the plurality opinion, the Supreme Court, discussed the important distinctions between Article III judgeships and the bank-

ruptcy judgeships established by the 1978 statute. The Supreme Court noted that "Congress possesses broad discretion to assign fact finding functions to an adjunct created to aid in the adjudication of congressionally created statutory rights," but that according non-Article III tribunals with "functions that have been traditionally performed" by Article III courts leads to "unwarranted encroachments upon the judicial power of the United States." Id. at 81, 84, 102 S.Ct. 2858. The plurality went on to state that the Bankruptcy Act of 1978 "carries the possibility of such an unwarranted encroachment." Id. at 84, 102

Bankruptcy Court to be a specialized court to handle bankruptcy matters in an expedited and efficient manner. *Baker & Getty*, 954 F.2d at 1173; *Grabill*, 967 F.2d at 1158. Congress did not set up this system intending these courts to handle lengthy jury trials. *Id.* Fourth, "[j]urisdictional statutes are to be construed 'with precision and with fidelity to the terms by which Congress has expressed its wishes.'" *Grabill*, 967 F.2d at 1154 (7th Cir.1992), (quoting *Palmore v. United States*, 411 U.S. 389, 396, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973)). Fifth, "Congress legislated with care in amending the Bankruptcy Act, and ... had it intended to provide for jury trials in bankruptcy court, it would 'not [have] left the matter to mere implication.'" *Grabill*, 967 F.2d at 1155. (Citation omitted); *see also In re Dooley Plastic Co.*, 182 B.R. at 79.

In this case, the core issue is the extent of an exemption claimed by Debtors over an asset of the estate and the authority of the Trustee to administer it. This issue concerns a core proceeding equitable in nature because it relates directly to the administration of the estate. After reviewing prior precedent, this Court agrees with the majority of decisions and concludes that there is a no right to trial by jury in bankruptcy core proceedings. Thus, the Bankruptcy Court did not err in denying Debtors a trial by jury.

## CONCLUSION

For the reasons stated above, the Court hereby **ADOPTS** the Magistrate–Judge's Report and Recommendation, (Docket No. 34), in its entirety.

IT IS SO ORDERED.

S.Ct. 2858. Accordingly, the Supreme Court concluded that the jurisdictional grant of the Bankruptcy Act of 1978 "impermissibly removed most, if not all, of the 'essential attrib-

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

ARENAS, Chief United States Magistrate Judge.

This matter comes before the court pursuant to an appeal taken from an opinion and order of the United States Bankruptcy Court for the District of Puerto Rico, Honorable Sara de Jesús, dated October 17, 2005, related to certain contested matters between Debtors and the Chapter 7 Trustee. (Case No. 99–11662.) (Bankruptcy Court Docket No. 182.) A notice of appeal along with a statement of election to have appeal heard by the district court and an amended designation of content of record on appeal were transmitted to this court on January 19, 2006. (Docket No. 1.) The court's jurisdiction is premised on 28 U.S.C. § 158(a)(1). This appeal was referred to me for a report and recommendation on May 4, 2006. (Docket No. 24.) Having considered the arguments of the parties, the evidence in the record and for the reasons set forth below, it is my recommendation that the decision of the Bankruptcy Court be affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND:

The following undisputed facts are taken from the opinion and order of the Bankruptcy Court and from the evidence on record. (Bankruptcy Court Docket No. 182.)

1. Jorge Barroso and Madeleine O. Rosario (hereinafter "Debtors") were the sole shareholders of Power-tronics, Inc. This corporation was dissolved on August 24, 1999. (Bank-

utes of the judicial power' from the Art. III district court, and vested those attributes in a non-Art. III adjunct." *Id.* at 87, 102 S.Ct. 2858.

ruptcy Court Docket No. 122, app. 3.)

2. On August 30, 1999, Power-tronics, Inc., Jorge Barroso, Madeleine O. Rosario and their conjugal partnership filed two complaints against the Puerto Rico Aqueduct and Sewer Authority (hereinafter "PRASA") for two projects located at Punta Santiago (KAC 99–1225) and Aguas Claras (KAC 99–1226) in the Puerto Rico Court of First Instance (San Juan Part). (Docket Nos. 27–3, at 13; 27–4, at 18.)

3. Both complaints comprised three causes of action: (1) breach of contractual obligations and corporate damages, (2) personal damages of Debtors for their economical loss and financial distress and (3) accounts receivable of Power-tronics. Debtors claimed $2,581,998.40 for Punta Santiago and $1,773,170 for Aguas Claras. (Docket Nos. 27–3, at 21–22; 27–4, at 28–29.)

4. On August 30, 1999, Debtors also filed a voluntary petition for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code. (Bankruptcy Court Docket No. 1.)

5. The United States Trustee appointed Wigberto Lugo Mender, Esq., to act as the Chapter 7 Trustee (hereinafter "the Trustee"). (Bankruptcy Court Docket No. 2.)

6. On September 20, 1999, Debtors filed their Schedules and Statement of Financial Affairs. (Bankruptcy Court Docket No. 5.)

7. Debtors' counsel delivered a copy of the suits to the Trustee during the section 341 meeting of creditors. (Bankruptcy Court Docket Nos. 10 and 11.)

8. Debtors filed in Schedule B–15, two accounts receivable owed by PRASA to Power-tronics, identifying them as Punta Santiago, $102,843.21 and Aguas Claras, $67,608.98. Debtors placed a value on each law suit at $4,000 in their filing of Schedule B–20. In Schedule C, Debtors claimed an exemption of $4,000 for each case, pursuant to 11 U.S.C. § 522(d)(5). Debtors did not amend these schedules. The Trustee did not file objections to these exemptions. (*Id.*)

9. On December 1, 1999, the Trustee filed the Application for Employment of Attorney Carmen Conde. Carmen Conde filed a statement along with the application for employment, pursuant to Federal Rule of Bankruptcy Procedure 2014. She disclosed her membership neither in the Board of Directors of the Government Development Bank (hereinafter "GDB") nor in the Board of Directors of the Puerto Rico Infrastructure Authority (hereinafter "AFI"). On May 4, 2000, the Bankruptcy Court approved the Application. (Bankruptcy Court Docket No. 13.)

10. On August 24, 2000, Debtors received their discharge. (Bankruptcy Court Docket No. 45.)

11. The Trustee requested that Berríos and Longo Law Firm (hereinafter "Berríos and Longo") continue with the legal representation of Debtors in the pending lawsuits against PRASA. Berríos and Longo represented Debtors in the suits and in matters concerning pre and post bankruptcy petition. On March 1, 2001, the Trustee filed an Application for Employment of Berríos and Longo. The law firm conditioned their application on a split of the proceeds between the estate

and Debtors on a 50–50 basis and compensation on a contingency basis. (Bankruptcy Court Docket No. 59.)

12. After a hearing regarding the application of this law firm, the Bankruptcy Court approved the appointment but not the condition of a 50/50 split of the proceeds obtained in the lawsuits. (*See* Transcript of the Hearing held on April 19, 2001 at the Bankruptcy Court at 8–10; Bankruptcy Court Docket No. 66.)

13. On August 15, 2001, Berríos and Longo sent a letter to Carmen Conde stating that "[e]ven after the exemptions were final and irreversible, the Debtors were willing to work in full cooperation with the Trustee and to share with the Estate the proceeds, if any, of the two exempted causes of action." (Bankruptcy Court Docket No. 122, app. 7.)

14. On August 20, 2001, Berríos and Longo filed a motion informing non assumption of representation of the estate due to conflict of interests resulting from the modified contract terms. (Bankruptcy Court Docket No. 78.)

15. On February 19, 2002, the Trustee withdrew the application for employment of special counsel Berríos and Longo. In turn, the Trustee maintained Carmen Conde and her law firm as his special counsel. (Docket Nos. 108; 111.)

16. The Trustee asked the local courts to stay the suits until the Bankruptcy Court could determine who had title over these causes of action. Instead, the Court of First Instance, San Juan Part, dismissed the suits without prejudice, reserving jurisdiction to order reopening of the cases at the request of the parties. (Bankruptcy Court Docket No. 182, at 5.)

17. On December 5, 2002, the Trustee filed a motion submitting an offer and compromise with PRASA, in order to settle the litigation. The settlement agreement stated $50,000 for each case. The Trustee requested court's approval pursuant to Federal Rule of Bankruptcy Procedure 9019. (Bankruptcy Court Docket Nos. 120 and 121.)

18. On December 12, 2002, Berríos and Longo sent a letter to Carmen Conde raising the issue of an alleged conflict of interests because of her membership in the GDB and AFI. On December 20, 2002, Conde sent her a reply letter. (Bankruptcy Court Docket No. 141, Ex. 5 and 6.)

19. The Bankruptcy Court approved the agreement settling all pending claims between the Trustee and the bankruptcy estate. The agreement settled both suits for $100,000 or $50,000 each. The Trustee stated that he would deliver $8,000 of settlement proceeds to Debtors in full satisfaction of their claimed exemptions. (Bankruptcy Court Docket No. 182.)

20. The opinion and order of the Bankruptcy Court which is now appealed concluded that (I) the circumstances of the case show Debtors undervalued the suits when listing the assets as contingent claims with a market value of $4,000 each; (ii) the exemptions claimed in Schedule C do not cover the entire market value of the suits listed both as contingent claims and accounts receivable, and are limited to Debtors' $8,000 interest in the assets;

(iii) the suits listed as assets under contingent claims were property of the estate and were not removed from the estate and the administration by the Trustee, by the exemption claimed by Debtors; (iv) the Trustee had no reason to object to the exemptions; (v) the Trustee can administer the suits listed as contingent claims and have the authority to settle these claims subject to court approval; (vi) the Bankruptcy Court has jurisdiction to approve the settlement and approve the agreement; and (vii) Debtors do not have a right to try this equitable matter before jury. (Bankruptcy Court Docket No. 182.)

21. Appellants' brief was filed on March 8, 2006. (Docket No. 10.) Appellants' reply brief was filed on June 7, 2006 and a supplemental motion was filed on June 9, 2006. (Docket Nos. 28 and 29.)[1]

22. Appellee's brief was filed on April 24, 2006. Appellee's sur-reply brief was filed on June 29, 2006. (Docket Nos. 15 and 32.)

## II. PARTIES' ISSUES ON APPEAL

The parties disagree as to the scope of the issues on appeal. Appellants present 14 issues, but the appellee argues that the same can be narrowed down to three issues. (Docket No. 15–1, at 6.) In consideration of each of the 14 issues presented by the appellants, their appeal refers to all seven conclusions of the Bankruptcy Court. Therefore, I have reviewed the entire Opinion and Order and the evidence on record. I find that all 14 issues can be narrowed down to the three issues presented by the Appellee. Those are the following:

1. Whether the Bankruptcy Court correctly concluded that the suits against the [PRASA] listed by the Debtors in their schedules are properties of the estate and were not removed from the estate by the exemption claimed by the Debtors.

2. Whether the Bankruptcy Court [correctly concluded] that [the] Debtors do not have [the] right to have this equitable matter tried before a jury.

3. Whether the Bankruptcy Court correctly concluded that counsel for the Trustee did not have an actual or potential undisclosed conflict of interest which mandated disqualification.

(Docket No. 2, at 1, ¶ 1; at 2, ¶¶ 2 & 3.)

## III. STANDARD OF REVIEW

"All appeals from the Bankruptcy Court are to the First Circuit Bankruptcy Appellate Panel unless a timely election is filed to have an appeal heard by the district court pursuant to 28 U.S.C. § 158(c)(1) and Rule 8001(e) of the Federal Rules of Bankruptcy Procedure." *Local Rules of the United States District Court for the District of Puerto Rico* Rule 77.2(d) (2004). Final orders of the Bankruptcy Court may be appealed to the district court and interlocutory orders may be appealed only with leave of the district court. 28 U.S.C. § 158(a)(1), (3).

"Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous," pursuant to Federal Rule of Bankruptcy Procedure 8013, while conclusions of law are review

---

**1.** Appellants used this reply brief to further extend these issues on appeal. I will not consider these further statements because this is an appeal from an opinion and order. I will consider the bankruptcy evidence on record, the opinion and order and the parties' statements related to the contested matters in this appeal.

de novo. *In re Marrama,* 313 B.R. 525, 529 (1st Cir. BAP 2004), *aff'd,* 430 F.3d 474 (1st Cir.2005), *cert. granted,* —— U.S. ——, 126 S.Ct. 2859, 165 L.Ed.2d 894 (2006); *see also T I Fed. Credit Union v. DelBonis,* 72 F.3d 921, 928 (1st Cir.1995); *In re La-Roche,* 969 F.2d 1299, 1301 (1st Cir.1992); *Matter of Rosa,* 196 B.R. 231, 234 (D.P.R. 1996). "A finding of fact is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been made." *Mitchell v. United States,* 141 F.3d 8, 17 (1st Cir.1998). "The standard is so exacting that where two views of the evidence are plausible, the trial court's preference cannot be deemed to be clearly erroneous, and may not be disturbed even where the appellate court would have held otherwise." *In re Diaz,* 261 B.R. 546, 548 (D.P.R.2001) (citing *Williams v. Poulos,* 11 F.3d 271, 278 (1st Cir.1993)). "The application of the [bankruptcy] code to a particular case poses a mixed question of law and fact, which is subject to review for clear error unless the bankruptcy court's analysis was infected by legal error or based on a mistaken impression of applicable legal principles." *In re Indep. Eng'g Co.,* 197 F.3d 13, 16 (1st Cir.1999). District courts give considerable deference to a bankruptcy judge's factual determinations and discretionary judgments. *In re Diaz,* 261 B.R. at 548–49.

Appellants claim that this court must review de novo the findings of fact and the conclusions of law because there was no hearing or testimony and the findings of fact made by the Bankruptcy Court are derived from the documents on the record. (Docket No. 10, at 2, ¶ 3.) To the contrary, Appellee states that this court must use the clearly erroneous standard, because the appeal concerns the extent of an exemption claimed by the Debtors over an asset of the estate and the authority of the Trustee to administer it. (Docket No. 15–1, at 7, ¶ 4.) Having considered both arguments it is my conclusion that this appeal concerns a core proceeding issue, since it relates directly to the administration of the estate. *See* 28 U.S.C. § 157. Therefore, the findings of fact are reviewed under the clearly erroneous standard and the conclusions of law are reviewed de novo.

## IV. ANALYSIS

### A. Approval of the settlement

When a debtor files a bankruptcy petition its property becomes property of the bankruptcy estate. 11 U.S.C. § 541. However, the debtor may claim certain properties as exempt. "The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section … Unless a party in interest objects, the property claimed as exempt on such list is exempt." 11 U.S.C. § 522(*l* ). The trustee may file objections to the list of property claimed as exempt within 30 days after the meeting of creditors. Fed. R. of Bankr.P. 4003(b). If no objection is made within the 30 day period, the trustee is precluded from challenging the exemptions. *Taylor v. Freeland & Kronz,* 503 U.S. 638, 643, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).

In Schedule B—Personal Property, and Schedule C—Property Claimed as Exempt, Debtors claimed $4,000 for each lawsuit for a total amount of $8,000 under section 522(d)(5).[2] (Bankruptcy Court

---

2. Debtors filed their bankruptcy petition on August 24, 1999. Section 522(d)(5) as written in that year applies. It allowed an exemption of "debtor's aggregate interest in any property, not to exceed in value $850 plus up to $8,075 of any unused amount" of the homestead exemption of section 522(d)(1). 11 U.S.C. § 522 (1999). This section was amended to allow an exemption not to exceed in value $975 plus up to $9,250 of any unused

Docket No. 5.)[3] The Trustee did not file objections to these exemptions. Then, the Trustee announced to the Bankruptcy Court that he had settled these lawsuits for a total of $100,000 without assistance from the Debtors or the law firm of Berríos and Longo, which was the legal counsel representing the Debtors in these claims. (Docket No. 15, app. 43, at 3, ¶ 1.) The Trustee recommended approval of the settlement to the Bankruptcy Court, stating that he would deliver $8,000 to the Debtors in satisfaction of their claimed exemptions and the rest of the money would go to the estate. (*Id.*) Debtors' contention is that two judicial cases were claimed as exempt *including their entire value and title.* Debtors rely on the rulings of *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). Debtors allege that since the Trustee did not object the exemptions claimed over the two lawsuits, he is now precluded from claiming the value in excess of $8,000 as part of the estate. (Docket No. 10, at 11, ¶ 1.) Debtors are now claiming that they are entitled to the entire amount of the settlement because "the date of valuation of an asset for purposes of determining whether it can be exempted is the date on which the petition for bankruptcy is filed; it is not a later date on which the asset may be worth a lot more." (Docket No. 10, at 24, ¶ 2.) The Trustee argues that Debtors are entitled to the $8,000 claimed as exempt and not to the entire value of the settlement. (Docket No. 15–1, at 8, ¶ 4.)

The Bankruptcy Court correctly distinguished *Taylor* from the case at bar. In *Taylor*, the debtor claimed an exemption over the "unknown" amount that she expected to receive in her discrimination suit and the trustee failed to timely object. *Taylor v. Freeland & Kronz*, 503 U.S. at 642, 112 S.Ct. 1644. In the case at bar, debtors claimed as exempt property of $4,000 for each claim, a total of $8,000. The Bankruptcy Court even referred that Debtors lacked candor in scheduling the suits under two separate categories and the enormous difference between the scheduled market value of both categories and the amount claimed in the lawsuits.[4] There is no clear error in the findings of fact of the Bankruptcy Court. Debtors did schedule the suits under two categories and then only claimed an exemption of $8,000 for both lawsuits as personal property. They did not request an exemption under the accounts receivable, which was the other category where the Debtors claimed both lawsuits. Also the claimed exemptions were within the amount provided by section 522(d)(5). Thus, the Trustee had no basis for objecting to this amount. The Bankruptcy Court relied on *In re Hyman*, 967 F.2d 1316, 1319 n. 6 (9th Cir.1992) to claim that "[a]ny ambiguity in schedules caused by the Debtors must be construed against them." (Docket 15, app. 43, at 11–12.) I concur with the court's conclusion.

These lawsuits were part of the outstanding accounts receivable of Powertron-

---

amount of the homestead exemption. 11 U.S.C. § 522(d)(5) (2004 & Supp.2006).

**3.** The lawsuits were identified in the Debtors Schedule B as other contingent and unliquidated claims of every nature including tax refunds, counterclaims of the debtor and rights to set off claims: P.R. Aqueduct and Sewer Authority, Aptdo. Postal 235, Caguas, PR 00726, Civil Suit KAC 99–1225 and KAC 99–1226 with a market value of $4,000.00

each, which means that the value claimed as exempt is a total of $8,000 for both lawsuits. (Bankruptcy Court Docket No. 5.)

**4.** Debtors scheduled the suits as accounts receivable under items 10 and 11 in Attachment 1 to Schedule B, as Aguas Claras and Punta Santiago projects with market values of $102,843.21 and $67,608.98, respectively. (Bankruptcy Court Docket No. 5, at 10.)

ics, which means that Debtors may file in their schedules exemptions for the alleged personal damages as claimed in these lawsuits. The remaining causes of action are claims of Power-tronics and not of its shareholders, meaning that these are corporate causes of action, wherefore under state law the corporate entity continues its existence for three years after its extinction or dissolution. *See* P.R. Laws Ann. tit. 14, § 3008. Debtors were impeded from asserting causes of action that are not theirs, rather from the corporate entity that they represented in the lawsuits. In the lawsuits, Debtors claimed as their personal damages $370,000 in KAC 99–1225 and $315,000 in KAC 99–1226. (Docket No. 84, at 10, Ex. 3, at 8, ¶ 38; at 22, Ex. 4, at 38–39, ¶ 41.) I believe that the $8,000 claimed as exempt by the Debtors are for these alleged personal damages. Debtors did not claim an exemption over the accounts receivable, because they knew that these outstanding claims were of Power-tronics and not their personal property.

Further, as the Bankruptcy Court interpreted, in *Taylor* the trustee did not show any interest in prosecuting the discrimination suit in dispute. To the contrary the Trustee in the case at bar, did show interest and finally reached an agreement. In my review de novo of the conclusions of law there is also no misinterpretation of the Bankruptcy Court related to Taylor. As explained by the court, when Debtors claimed an amount for the entire asset, they are only entitled to such an amount and not to the entire value of the asset. The bankruptcy estate retains an interest over the rest of the amount not claimed as exempt. "[D]ebtor's property remains property of the estate to the extent its value exceeds the statutory amount which the debtor is permitted to exempt." *In re Gaylor*, 123 B.R. 236, 239 (Bankr. E.D.Mich.1991); *see also In re Soost*, 262 B.R. 68, 72 (8th Cir. BAP 2001) ("the exempted interest has a value that is equal to the amount of the claimed exemption. Under these circumstances the bankruptcy estate retains an interest in the subject asset because only a partial interest has been exempted by the debtor.")

The causes of action that refer to the corporate damages for breach of contract or for payments to the corporation of accounts receivable are property of the estate and thus, not subject to the exemptions claimed by Debtors. Pursuant to section 522(d)(5), Debtors' exemptions were for their personal damages as asserted in the complaints. The Trustee correctly settled the lawsuits for the interest of the Debtors, the estate and creditors.

### B. Right to trial by jury

Debtors also claim that the Bankruptcy Court erred in not providing trial by jury. They allege that the court "failed to address that the ultimate issue before it is a two party dispute, related to the title (ownership) of the two causes of action at hand." (Docket No. 10, at 28, ¶ 2.) As the Bankruptcy Court stated, the ultimate issue referred to an exemption claim under section 522(d)(5), thus equitable in nature and related to the administration of the estate. Those issues are under the sole authority of the Bankruptcy Court. (*See* Bankruptcy Court Docket No. 182, at 18.) Bankruptcy courts have jurisdiction to deal with controversies arising over the property in their actual or constructive possession. *Katchen v. Landy*, 382 U.S. 323, 327, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966). "So, in cases of bankruptcy, many incidental questions arise in the course of administering the bankrupt estate, which would ordinarily be pure cases at law, and in respect of their facts triable by jury, but, as belonging to the bankruptcy proceedings, they become cases over which

the bankruptcy court, which acts as a court of equity, exercises exclusive control." *Barton v. Barbour,* 104 U.S. 126, 134, 26 L.Ed. 672 (1881); *Muratore v. Darr,* 375 F.3d 140, 143 (1st Cir.2004).

Whether the rights afforded by the Seventh Amendment of the United States Constitution are applicable to a particular case, courts must determine if they are confronted with actions requesting remedies at law or actions inherently equitable in nature. If the action relates to remedies at law, the parties are entitled to a trial by jury, to the contrary, if it is an action in equity the trial court may dispose of the claim without affording the right of a trial by jury. *See Ross v. Bernhard,* 396 U.S. 531, 533, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970); *Parsons v. Bedford, Breedlove & Robeson,* 28 U.S. 433, 447, 3 Pet. 433, 7 L.Ed. 732 (1830).

It is my conclusion that when Debtors submitted themselves to the equitable jurisdiction of the Bankruptcy Court, they adhere to the procedures of the court. Debtors are impeded from asserting a right to trial by jury, when the issue concerns a core proceeding equitable in nature.

### C. Counsel undisclosed conflict of interests

On May 4, 2000, the Bankruptcy Court approved the Application for Employment of Attorney Carmen Conde as counsel for the Trustee. (Bankruptcy Court Docket No. 13.) On March 26, 2001, Carmen Conde was appointed a member of the Board of Directors of the GDB, and therefore to the Board of Directors of its subsidiary AFI. (Bankruptcy Court Docket No. 137, Ex. 2.) The Trustee also filed an Application for Employment of Berríos and Longo Law Firm, which were counsel for Debtors in the civil suits. The Bankruptcy Court approved the employment of Berríos and Longo without the conditions set forth in the agreement for the distribution of the proceeds of the lawsuits. (Bankruptcy Court Docket No. 66.) On August 20, 2001, Berríos and Longo filed a motion informing non assumption of representation of the estate due to a conflict of interests resulting from the modified contract terms. (Bankruptcy Court Docket No. 78.) Berríos and Longo further stated that both causes of action were excluded from the property of the estate, since Debtors claimed exemptions over these lawsuits in Schedule C. (Bankruptcy Court Docket No. 78.) On February 19, 2002, the Trustee withdrew the application of Berríos and Longo. (Bankruptcy Court Docket No. 108.) On December 5, 2002, the Trustee filed a motion submitting compromise and settlement offer with PRASA in the amount of $100,000 for both lawsuits. (Bankruptcy Court Docket No. 121.) On December 12, 2002, Berríos and Longo sent a letter to Carmen Conde raising the issue of her alleged conflict of interests due to her membership in the Board of Directors of GDB and AFI. (Bankruptcy Court Docket No. 137, Ex. 5 and Ex. 6.) On December 20, 2002, Carmen Conde sent a reply letter to Berríos and Longo stating that her membership in the Board of Directors of GDB and AFI do not constitute executive authority over PRASA, as defined on the Law of Governmental Ethics, P.R. Laws Ann. tit. 3, § 1824(a), (f). Attorney Conde stated that she has not acted in her official capacity as counsel for the Trustee and that Aguas Claras and Punta Santiago projects are not financed by AFI. (Bankruptcy Court Docket No. 126, Ex. 7.)

Debtors aver that Carmen Conde had an undisclosed conflict of interests from her activities as a member of the Board of Directors of GDB and AFI and that Conde had an interest adverse to the estate and was not a disinterested person. As stated

by the court, Conde explained that PRASA has its own Board of Directors separate from AFI's Board. (Bankruptcy Court Docket No. 182, at 13.) AFI provides financing and administration of some strategic special projects of PRASA which are totally unrelated to the projects involved in the lawsuits. (Bankruptcy Court Docket No. 182, at 14.) The Bankruptcy Court in its sole judgment revised the arguments of both sides and decided that there was no conflict of interests. The court stated that Debtors failed in proving the initial burden of demonstrating Carmen Conde's actual or potential undisclosed conflict of interests. Then, the court adopted as its own and incorporated Carmen Conde and the United States Trustee's reasoning in Docket Nos. 141, 152 and 155 of the Bankruptcy Court. (*Id.*)

Section 327(a) of the Bankruptcy Code permits the employment of professional persons, like attorneys, to represent and assist the trustee in carrying out his duties. 11 U.S.C. § 327(a); Fed. R. Bankr.P.2014. This section requires the court's approval of such employment before this person can actually perform his/her professional duties. There is a two-part test in the employment of the professional; first the professional must "not hold or represent an interest adverse to the estate" and must be a "disinterested person[ ]...." 11 U.S.C. § 327(a). The first part of the test is not defined in the Bankruptcy Code. Therefore, some courts, including the First Circuit Court of Appeals, have adopted the definition of *In re Roberts,* 46 B.R. 815 (Bankr.D.Utah 1985), *aff'd in part, modified in part and reversed in part* by 75 B.R. 402 (D.Utah 1987):

> (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival

claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate.

*In re Roberts,* 46 B.R. at 827; *see In re AroChem Corp.,* 176 F.3d 610, 623 (2d Cir.1999); *In re Crivello,* 134 F.3d 831, 835 (7th Cir.1998); *Rome v. Braunstein,* 19 F.3d 54, 58 n. 1 (1st Cir.1994); *In re Hot Tin Roof, Inc.,* 205 B.R. 1000, 1003 (1st Cir. BAP 1997).

"Disinterested person" is defined as one who "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14)(c). "These statutory requirements—disinterestedness and no interest adverse to the estate—serve the important policy of ensuring that all professionals appointed pursuant to section 327(a) tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities." *Rome v. Braunstein,* 19 F.3d at 58.

In deciding whether there is a conflict of interests bankruptcy judges must, on a case by case basis, perform an objective test of the facts and circumstances that may render the appointment of such attorney as materially adverse to the estate or the creditors. Bankruptcy judges must carefully scrutinize whether there is actual, potential or a perception of a potential conflict. *See In re Martin,* 817 F.2d 175, 182 (1st Cir.1987). Therefore, whether a disqualifying conflict of interests exists must be considered under the particular facts and circumstances of the case. The standard is discretionary in itself. Thus, I may only recommend to set aside the application for employment if the Bankruptcy Court abused its discretion. "When evaluating proposed retention, a

bankruptcy court 'should exercise its discretionary powers over the approval of professionals in a manner which takes into account the particular facts and circumstances surrounding each case and the proposed retention before making a decision.'" *In re AroChem Corp.*, 176 F.3d at 621 (quoting 3 *Collier,* ¶ 327.04[1][a] (15th ed. rev.1998)).

Section 327 requires first, that the trustee demonstrate the capacity and qualifications of the attorney and then pursuant to Bankruptcy Rule 2014(a) the attorney's application must specify whether the attorney has any connection with creditors, debtors or with any other party that may represent an interest adverse to the estate. Finally, the bankruptcy court will exercise its discretionary powers to determine the feasibility of employing this attorney. Bankruptcy judges have "wide discretion" to approve the appointment of a special counsel. They are "on the front line, in the best position to gauge the ongoing interplay of factors and to make the delicate judgment calls which such decision entails." *In re Martin,* 817 F.2d at 182.

 Based on 11 U.S.C. § 327(a), it is my conclusion that the bankruptcy court is the sole authority to decide whether the professional person may perform the duties for which she is employed and whether this person has any interest adverse to the estate. Having reviewed the facts considered by the Bankruptcy Judge, it is my conclusion that there is no actual or potential conflict of interests between Carmen Conde and her appointment as special counsel to settle the lawsuits.

## V. CONCLUSION

For the reasons stated above, it is my recommendation that the Bankruptcy Court's opinion and order be affirmed in its entirety.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. *See Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir.1992); *Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985 (1st Cir.1988); *Borden v. Sec'y of Health & Human Servs.,* 836 F.2d 4, 6 (1st Cir.1987); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir.1980).

Dated Nov. 18, 2006.